Robert THURBER

v.

BILL MARTIN CHEVROLET, INC.

Supreme Judicial Court of Maine.

Argued Jan. 14, 1985.

Decided Feb. 7, 1985.

Marden, Dubord, Bernier & Stevens, Alton C. Stevens (orally), Waterville, for plaintiff.

Pierce, Atwood, Scribner, Allen, Smith & Lancaster, Gerard Fournier (orally), Malcolm L. Lyons, Augusta, for defendant.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, WATHEN, GLASSMAN and SCOLNIK, JJ. .

SCOLNIK, Justice.

This action by the Plaintiff, Robert Thurber, to rescind his purchase of a used car from Bill Martin Chevrolet, Inc. ("Bill Martin") and to recover the purchase price brings the Used Car Information Act, 10 M.R.S.A. §§ 1471, et seq. (1981), before us for the first time. After a jury trial in Superior Court, Kennebec County, Thurber recovered judgment for the purchase price but the court denied his post-judgment motions for attorney's fees and a civil penalty against Bill Martin. Because we agree with Thurber that 10 M.R.S.A. § 1476(4) requires that reasonable attorney's fees be awarded to a prevailing plaintiff, we vacate the Superior Court's denial of that motion. Because we also agree with him that § 1477(2) (1981)[1] requires the award of a civil penalty where, as here, the dealer did not prove that the violation occurred unintentionally and despite reasonable procedures adopted to avoid error, we also vacate the Superior Court's denial of a civil penalty. We deny Bill Martin's cross-appeal attacking the jury verdict and affirm the judgment.

In relevant part, the Used Car Information Act imposes a duty on motor vehicle dealers to sell only vehicles that meet the State inspection requirements, 29 M.R.S.A. § 2122, and that have, in fact, been inspected. 10 M.R.S.A. § 1474(1).[2] The sole exception to the dealer's obligation is the case of a vehicle that is sold "for a purpose other than transportation." 10 M.R.S.A. § 1472.[3] Saving only that exception, the dealer's obligation may not be waived or excluded by either the dealer or the buyer. 10 M.R.S.A. § 1474(2).[4] In section 1476(1), the Act provides, "[n]o dealer shall fail to perform his obligation under a warranty made in accordance with this chapter." With regard to the "inspection warranty" of section 1474(1), the dealer "fails to per-

---

**1.** 10 M.R.S.A. § 1477 was amended by P.L.1983, c. 311, §§ 4 and 5. The present case is controlled by § 1477(2) (1981), as enacted by P.L. 1981, c. 296. The text of that subsection is set out in footnote 6.

**2.** § 1474(1):

*Warranty content.* A dealer warrants that the motor vehicle he sells, negotiates the sale of, offers for sale or transfers to a person has been inspected in accordance with Title 29, section 2122 and with the rules and regulations promulgated thereunder and that the motor vehicle is in the condition and meets the standards required by that statute and the rules and regulations.

· In addition to the "inspection warranty," the Act imposes requirements on the making of other warranties in connection with a sale. These include detailed written descriptions of the warranty. §§ 1474(3), 1475. The Act also requires

that the dealer perform its obligations under any such other warranty within specified time periods. § 1476(2). However, the Act does not, by itself, require that any warranty other than the "inspection warranty" be given at all.

**3.** § 1472:

*Exclusions.* Nothing in this chapter shall apply to motor vehicles sold, offered for sale or transferred for a purpose other than transportation if that purpose is conspicuously written in the contract, but evidence outside the contract will be admissible to contradict such a contract provision.

**4.** § 1474(2):

*Exclusion Limitation, Modification or Waiver Prohibited.* The warranty referred to in subsection 1 herein, and any person's remedies for breach thereof, may not be excluded, limited, modified or waived by words or conduct by either the dealer or any other person.

form his obligation" at the time of transfer of the vehicle, if it is then uninspected. 10 M.R.S.A. § 1476(2)(C). *Cf.* 11 M.R.S.A. § 2–725(2) ("A breach of warranty occurs when tender of delivery is made . . ."). If the dealer thus fails in its obligation, the buyer is given a choice of contract remedies by section 1476(3). If the buyer brings a contract action for rescission or damages under section 1476 and shows that the dealer "failed to perform his obligations," then the buyer may petition the court for an award of reasonable attorney's fees. 10 M.R.S.A. § 1476(4).[5]

In addition to the contract remedies provided by section 1476, the Legislature has given the prevailing purchaser an additional remedy. Under the 1981 amendment that governs this case, he may recover a "civil penalty" under section 1477(2).[6] Though the plaintiff is required to prove only the breach of warranty to recover the contract damages of section 1476, he has an additional obstacle to surmount in order to recover the "civil penalty." If the dealer "shows by a preponderance of evidence that the violation was unintentional and a bona fide error, notwithstanding the maintenance of procedures reasonably adopted to avoid any such error," then it may avoid the penalty. The statute enunciates the Legislature's judgment that vehicles sold for transportation must meet the requirements of 29 M.R.S.A. § 2122 when sold, and that the burden of ensuring compliance should properly be on the dealer.

## I.

■ In its cross-appeal Bill Martin attacks the verdict as unsupported by sufficient evidence. Though it is not clear that the plaintiff has a right to a jury trial, this case was tried to a jury by the parties' consent. When a jury is sitting by consent of the parties the verdict of the jury has the same effect as if the case had actually been triable to a jury as of right. *McCain Foods, Inc. v. St. Pierre*, 463 A.2d 785, 787 (Me.1983); *Smith v. Tonge*, 377 A.2d 109, 112 (Me.1977). M.R.Civ.P. 39(d). Regarding the challenge to the sufficiency of the evidence, we have repeatedly stated that we will not overturn a verdict that is supported by any credible evidence, if the jury could rationally reach the result it did. *Sylvain v. Masonite Corp.*, 471 A.2d 1039, 1041 (Me.1984); *Blackman v. Jackson*, 458 A.2d 755, 756 (Me.1983). The jury could reasonably have found the following facts. Thurber visited Bill Martin Chevrolet, Inc. on December 7, 1981. He informed the salesman that he wanted an inexpensive used car with which to commute to work, since his wife had just become employed and needed the family car. He was shown a 1976 Fiat which, the salesman told him, needed repairs before it could pass inspection. The salesman also told him that the car was sold "wholesale" and that Bill Martin would neither inspect the car nor do any of the necessary work. The salesman told him that the Fiat was a "good running car." Thurber test drove it. Because they had trouble starting the car, Bill Martin replaced the battery with another used one,

5. § 1476(4):

   *Attorney's Fees.* If the court finds, in any action commenced under this section, that the dealer failed to perform his obligations under the warranty, the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount in controversy, be awarded reasonable attorney's fees and costs incurred in connection with said action.

6. § 1477(2) (1981):

   *Civil Penalty.* In addition to any other remedy, if a dealer violates this chapter, he shall be liable to the purchaser in an amount determined by the court of not less than $100 nor more than $1,000 and for costs and reasonable attorney's fees. No action may be brought for a civil penalty under this subsection more than 2 years after the date of the occurrence of the violation. No dealer may be held liable for a civil penalty under this subsection if he shows by a preponderance of evidence that the violation was unintentional and a bona fide error, notwithstanding the maintenance of procedures reasonably adopted to avoid any such error.

   The 1983 amendments to § 1477 rename the 1981 "civil penalty" a "private remedy," and use the term "civil penalty" to denote the "forfeiture" which, now, may also be imposed.

on which it gave Thurber a thirty-day warranty, but the dealer performed no other repairs. Despite Thurber's statements about the use to which he intended to put the car, the salesman informed Thurber that "wholesale" cars were sold only for junk or parts, not for transportation. However, as the salesman himself testified, he had no reason to think that Thurber wanted the car for any purpose other than transportation. Indeed, Thurber is neither a mechanic nor a junk yard operator, nor did he own another Fiat for which he needed parts.

On December 7, 1981 Thurber signed a "Retail Buyer's Order" that stated "Sold as is/no state inspection/no warranty." When he picked up the car the next day he was presented with a "Limited Warranty/Used Car" form. Although that form contained an "Inspection Warranty" in language similar to that of 10 M.R.S.A. § 1474(1), it had been crossed out. In its place the salesman had inserted the words, "No warranty expressed or implied. Sold for parts or junk only not for transportation." When Thurber challenged that clause, he was told that it was "just a formality." He paid $954.75 for the Fiat.

It soon appeared that the car had more problems than Thurber had realized. He had to pay $260 to another garage for repairs necessary to pass the State inspection. Within a month he discovered that the engine required at least $500 worth of further repairs in order to stay operable. Instead of going to this further expense, he returned the vehicle to Bill Martin. The dealer was unwilling to trade the car for another or otherwise satisfy Thurber. He then sought counsel and initiated this action for rescission and return of the purchase price under 10 M.R.S.A. § 1476(3).

Following trial, the jury answered certain questions on a special verdict form. It found that, (1) the vehicle had not been sold "for a purpose other than transportation," (2) the vehicle had not been inspected by Bill Martin before delivery to Thurber, and (3) the vehicle did not meet Maine's inspec-

tion standards when delivered. These are the elements of a breach of the "inspection warranty." 10 M.R.S.A. § 1476(2)(C). Accordingly, the trial justice entered judgment for Thurber in the sum of $954.75, the amount it determined to be the consideration for the car.

■■■ Whether or not the "not for transportation" clause was a conspicuous part of the contract, 10 M.R.S.A. § 1472 makes admissible parol evidence to contradict this provision. By that section the Legislature obviously intended to prevent the dealer from using a contract "formality" to evade its inspection obligation if the vehicle was, in fact, bought for transportation. The evidence clearly supports the jury's special finding that the Fiat was, in fact, sold for transportation.

■■■ The dealer argues strenuously that Thurber knew he was buying an uninspected car that did not meet the inspection standards. It argues that it could not have violated the Act which, it contends, exists only to protect the ignorant and unwary. If, by this argument, the dealer means that Thurber waived the Act's protection, we note that he could not have done so. 10 M.R.S.A. § 1474(2). The Act imposes an affirmative obligation on dealers and prohibits the dealer or any other person from waiving it. Accordingly, we conclude that there is competent evidence to support the verdict and that the jury could rationally reach the result it did. We affirm the judgment.

## II.

Thurber filed two post-judgment motions in the Superior Court. The first requested the court to award him reasonable attorney's fees, as required by 10 M.R.S.A. §§ 1476(4) and 1477(2). Both of these sections providing for attorney's fees use similar language. Upon the dealer's "[failure] to perform his obligations under the warranty," the purchaser "shall ... be awarded reasonable attorney's fees." 10 M.R.S.A. § 1476(4). When the dealer "violates

this chapter" he "shall be liable to the purchaser" for reasonable attorney's fees. 10 M.R.S.A. § 1477(2). Despite this language, the Superior Court denied Thurber's motion for attorney's fees without comment. Though Bill Martin contends that the word "shall" is not mandatory as used here, we conclude that the court was in error.

■ We have certainly held that the word "shall" in legislation may sometimes be merely directory, not mandatory. *E.g., Rogers v. Brown,* 135 Me. 117, 190 A. 632 (1937). Our purpose, in the final analysis, is to determine the meaning that the Legislature intended its words to have. *Alpha Rho Zeta v. Inhabitants of the City of Waterville,* 477 A.2d 1131, 1136 (Me.1984). Thus, where reading "shall" as mandatory would have obviated the need for other, discretionary functions provided for by the statute, we held that the word was directory in nature. *Rogers v. Brown,* 135 Me. at 119, 190 A. at 633. On the other hand, where a mandatory reading would result in no such internal inconsistency, and where the attorney's fees are clearly and unambiguously provided for where the court finds a violation of the statute, "shall" *requires* that the court award them to the prevailing plaintiff. *Robbins v. Foley,* 469 A.2d 840 (Me.1983). In *Robbins* we held that a finding of a violation of the statute regulating rental security deposits, 14 M.R.S.A. § 6034, "inescapably leads to the conclusion that plaintiffs are entitled to ... reasonable attorney's fees and court costs...." 469 A.2d at 842.

■ The Legislature undoubtedly inserted the attorney's fees provisions in the Used Car Information Act to furnish a financial incentive to the bar to ensure its willingness to help enforce the Act's provisions in cases where, but for a statutory provision for the mandatory award of attorney's fees to a prevailing purchaser, it would be financially impractical for the buyer to obtain effective legal representation. Indeed, 10 M.R.S.A. § 1476(4) provides for attorney's fees "irrespective of

the amount in controversy." Absent any internal inconsistency such as existed in *Rogers v. Brown,* we hold that 10 M.R.S.A. § 1476(4) clearly and unambiguously requires that a prevailing plaintiff in an action under section 1476 be awarded reasonable attorney's fees. Accordingly, we vacate the denial of Thurber's motion and remand to the Superior Court to award attorney's fees in accordance with the factors set forth in *Poussard v. Commercial Credit Plan, Inc. of Lewiston,* 479 A.2d 881, 884 (Me.1984), but "irrespective of the amount in controversy." Because section 1476(4) controls here, we need not decide whether section 1477(2) (1981) also requires an award of attorney's fees to the plaintiff in an action under section 1476, or only to a plaintiff prevailing in an "action" to recover the civil penalty of section 1477(2). Nor need we consider the parallel attorney's fees provision of the Unfair Trade Practices Act, 5 M.R.S.A. §§ 206, *et seq.,* which is expressly made applicable to this action by 10 M.R.S.A. § 1477(1).

## III.

■ Thurber's second post-judgment motion requested that the court award him a civil penalty of not less than $100 nor more than $1000 under section 1477(2) (1981). The court refused, indicating that the penalty was inappropriate where the dealer had told the buyer exactly what he was getting, that is, an uninspected vehicle. We disagree. First, the statute does not permit either party to waive the dealer's duty to sell an inspected vehicle. Therefore, the dealer may not avoid that duty by telling the customer it is not complying with it. Second, the word "shall" is mandatory here as well. In the plain language of section 1477(2) (1981), "if a dealer violates this chapter, he shall be liable to the purchaser...." Reading that clause as mandatory does not bring it into conflict with any other part of the Act. The penalty furthers the Legislature's intent by encouraging compliance with the Act.

There is, of course, an exception. If the dealer "shows by a preponderance of evidence that the violation was unintentional and a bona fide error, notwithstanding the maintenance of procedures reasonably adopted to avoid any such error," it will not be liable for the penalty. Neither the court nor the jury specifically made such a finding here, nor could they have on this evidence. Bill Martin concededly intended to sell the Fiat without inspecting it. Indeed, its argument to this court was that, because Thurber knew the car was uninspected, he must not have been buying it "for transportation." Nor was there any showing of "procedures reasonably adopted to avoid any such error."

Accordingly, we vacate the Superior Court's denial of Thurber's motions, and remand for that court to award attorney's fees and to determine the amount of the penalty to be awarded.

The entry is:

Judgment affirmed.

Post-judgment Orders denying motions reversed.

Case remanded to the Superior Court for proceedings consistent with the opinion herein.

All concurring.