2001 ME 112

**SEACOAST HANGAR CONDOMINIUM II ASSOCIATION et al.**

v.

**Donald E. MARTEL et al.**

Supreme Judicial Court of Maine.

Argued May 15, 2001.
Decided July 18, 2001.

---

David A. Soley (orally), William M. Welch, Bernstein, Shur, Sawyer & Nelson, Portland, for plaintiffs.

Robert M.A. Nadeau (orally), Thomas P. Elias, Nadeau & Assoc., P.A., Sanford, for defendants.

William H. Dale, Natalie L. Burns, Jensen Baird Gardner & Henry, Portland, for party in interest.

Panel: WATHEN, C.J.,* and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

DANA, J.

[¶ 1] Donald E. Martel, Norwood Nelson, and Sanford Air, Inc. (collectively, Martel et al.), appeal from the judgments of the Superior Court (York County, *Fritzsche, J.*) rendering partial summary judgments on the first two counts of a complaint filed by the Seacoast Hangar Condominium II Association (the Association), dismissing the third-party complaint filed by Nelson and Chester Sawtelle, denying Martel and Nelson's motion for at-

torney fees, and granting the Association's verified bill of costs. Martel et al. contend that the court erred in declaring that Donald Percy, George Chaudoin, and Charles Smith are the directors of the Association and Percy, Chaudoin, and Mark Brunelle are its officers; in declaring that the Association, not Sanford Air, has all tenant rights pursuant to a lease with the Town of Sanford; in dismissing the third-party complaint alleging breaches of fiduciary duties by Percy, Brunelle, Chaudoin, and Smith; in denying Martel and Nelson's request for attorney fees without conducting an evidentiary hearing; and in granting the Association's verified bill of costs without an evidentiary hearing. We agree that the court should hold a hearing on Martel and Nelson's request for attorney fees and costs, but otherwise affirm.

## BACKGROUND

[¶ 2] On September 31, 1986, Sanford Air leased premises located at the Sanford Municipal Airport from the Town of Sanford pursuant to a Land Lease and Rights Agreement (the lease) that will expire on September 31, 2006. In the fall of 1986, Sanford Air constructed a ten-unit hangar on the leased property. Sanford Air formed the Seacoast Hangar Condominium II (the Condominium) by declaration on November 28, 1986, pursuant to the Maine Condominium Act, 33 M.R.S.A. §§ 1601–101 to 1604–118 (1999).

[¶ 3] The declaration of the Condominium provided for Sanford Air to appoint an executive board for the control period, which would expire sixty days after the conveyance of seventy-five percent of the units or within two years after the conveyance of the first unit, whichever happened first. At the expiration of the control peri-

---

* Although not available at oral argument, Chief Justice Wathen participated in this opinion. *See* M.R.App.P. 12(a) (stating that a "qualified justice may participate in a decision even though not present at oral argument").

od, the declaration provides for the unit owners to participate in a transition meeting to elect three new directors, at least two of whom must be unit owners or the spouses of unit owners.

[¶ 4] Sanford Air sold all the units to individual purchasers by the end of December, 1986. On December 30, Sanford Air appointed Martel president of the Condominium Association and Loren Harmon the treasurer and secretary. The parties dispute whether the Condominium held a transition meeting on or about December 31, 1986, electing Martel president and Harmon vice president.

[¶ 5] Seacoast Hangar Condominium II Association (the Association) was incorporated as a nonprofit non-stock corporation by filing articles of incorporation on May 16, 1988. The articles of incorporation named Martel, Harmon, and attorney Peter Edmands directors, Martel president, and Harmon treasurer and secretary. The by-laws of the Association provide for the first annual meeting of the unit owners to be held "[w]ithin thirty (30) days after the turnover date as hereinafter defined, or at any time at the option of [Sanford Air] set forth in the aforesaid Declaration, whichever first shall occur. . . ." According to the by-laws, the turnover date is "that certain date immediately after the earlier to occur of sixty (60) days after the closing of the conveyance of seventy-five percent (75%) of the units or two (2) years following the conveyance of the first Unit to a purchaser." The by-laws also provide that the removal of any member or members from the board of directors requires a two-thirds vote of the Association.

[¶ 6] In November 1998, six of the ten Association members requested that the secretary call a transition meeting to elect successor members of the board of directors. After notice, the Association held a meeting on December 8, 1998, which all members attended in person or by proxy. The vote was six to four in favor of a new board (Smith, Chaudoin, and Percy), which unanimously elected Percy president, Chaudoin secretary, and Brunelle treasurer. Percy formally notified all unit owners of the election.

[¶ 7] Edmands, as clerk, filed the Association's 1999 annual report with the Secretary of State, listing the newly elected individuals as the directors and officers, Edmands remaining as clerk. After the 1998 meeting, however, Martel continued to act as president, and Sanford Air billed the unit owners for special assessments and regular condominium fees. The newly elected individuals requested in writing that Martel cease acting as an officer and director.

[¶ 8] The Association filed a complaint in the Superior Court seeking a declaratory judgment that the new directors and officers were elected at the 1998 meeting (count one); a declaratory judgment that the Association is the lawful tenant under the lease (count two); an accounting pursuant to 33 M.R.S.A. § 1603–118 and 13–B M.R.S.A. § 715 (1981) (count three); damages for breach of fiduciary duty by Martel (count four); damages for breach of the Maine Condominium Act, the declaration, and the by-laws (count five); damages for conversion and an order that Martel turn over all of the books, records, and funds related to the Condominium and the Association (count six); and costs. Thereafter the Town refused to accept money from the Association or to renegotiate the lease of the premises until the court determined who was the legal tenant. Following the Association's motion, the court granted summary judgments on counts one and two, but denied the Association's motion on count five. Martel et al. filed a motion to reconsider the summary judgment granted on count two, which the court denied.

[¶ 9] Defendants Nelson and Sawtelle also filed a third-party complaint against Percy, Brunelle, Chaudoin, and Smith (hereinafter sometimes Percy et al.), alleging that they breached their fiduciary duties to the Association by incurring legal fees for meritless litigation. The third-party complaint sought damages, costs, and attorney fees. Percy et al. moved to dismiss the third-party complaint on the ground that they were authorized to bring a law suit on behalf of the Association to resolve a legitimate dispute with Martel et al. The court granted the motion to dismiss the third-party complaint.

[¶ 10] The Association moved to withdraw the remaining counts of its complaint. The court granted the motion and entered a final judgment incorporating the earlier summary judgments on counts one and two, as well as the dismissal of the third-party complaint. Martel and Nelson filed a motion for attorney fees based on the indemnification provisions of the declaration and the by-laws. Without an evidentiary hearing, the court denied Martel and Nelson's motion for attorney fees and awarded costs in the Association's favor in the amount of $1703.64. This appeal followed.

## DISCUSSION

### A. Summary Judgment on Count One

[¶ 11] Martel et al. contend that the court erred in rendering a summary judgment declaring that Smith, Chaudoin, Percy, and Brunelle were properly elected as directors and officers of the Association. According to Martel et al., a transition meeting took place, pursuant to article VII, section 7.2.1 of the declaration, on or about December 31, 1986. Martel et al. also contend that article V, section 10 of the by-laws requires a two-thirds vote to remove board members, which was not satisfied at the 1998 meeting when six of the ten unit owners voted for a new board.

[¶ 12] The Association contends that a valid election took place at the 1998 meeting and that, even if a transition election occurred in 1986, the directors' terms had long since expired, so a simple majority was sufficient to elect their successors.

■ [¶ 13] "[W]hen we review the grant of summary judgment, we consider the evidence in the light most favorable to the party against whom the judgment is issued, and we will only affirm the judgment if a review of the record demonstrates that there is no genuine issue of material fact and the grant of the judgment was correct as a matter of law." *Stitham v. Henderson*, 2001 ME 52, ¶ 10, 768 A.2d 598, 601.

■ [¶ 14] A majority vote of the unit owners was adequate to elect new directors because each director was to serve for a one-year, two-year, or three-year term pursuant to the by-laws, and Martel et al. admit that the board held no annual meetings or elections between December 1986 and December 1998. Because the directors' terms had expired, a simple majority was adequate to elect their replacements. *See* 13–B M.R.S.A. § 702(3) (1981) ("Each director shall hold office for the term to which he is elected or appointed and until his successor shall have been elected or appointed and qualified."). We therefore affirm the court's summary judgment declaring that Smith, Chaudoin, Percy, and Brunelle were elected directors and officers at the 1998 meeting.

### B. Summary Judgment on Count Two

[¶ 15] Sanford Air contends that the court erred in depriving it of its right to act as a Fixed Base Operator (FBO) of the Sanford Municipal Airport. At oral argument, counsel agreed that the Association did not have a right, pursuant to the lease or the court's judgment, to act as FBO. With the understanding that the court's

judgment only relates to the real estate condominium, we affirm the summary judgment on count two, which declares that the Association, not Sanford Air, is the legal tenant pursuant to the lease.

## C. Dismissal of the Third-party Complaint

[¶ 16] "A motion to dismiss pursuant to M.R.Civ.P. 12(b)(6) tests the legal sufficiency of the complaint." *New Orleans Tanker Corp. v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673, 674. In reviewing a dismissal, we regard the material allegations of the complaint as admitted and view the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *Id.* ¶ 3, 728 A.2d at 674–75 (internal quotation marks omitted). "[W]e are not bound to accept the complaint's legal conclusions." *Bowen v. Eastman*, 645 A.2d 5, 6 (Me.1994) (citing *Robinson v. Washington County*, 529 A.2d 1357, 1359 (Me.1987)). We will affirm a dismissal "only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *New Orleans Tanker*, ¶ 3, 728 A.2d at 675 (internal quotation marks omitted).

[¶ 17] Nelson and Sawtelle contend that the court erred in dismissing the third-party complaint because, had they been allowed to provide evidence, they could have established that Percy et al. breached their fiduciary duties and acted with malice and in bad faith. According to Nelson and Sawtelle, it did not "appear[ ] beyond doubt that [they were] entitled to no re-

lief...." *Larrabee v. Penobscot Frozen Foods, Inc.*, 486 A.2d 97, 99 (Me.1984).

[¶ 18] According to Percy et al., the court properly dismissed the third-party complaint because the underlying suit raised a bona fide dispute. They contend that bringing a lawsuit to resolve a dispute cannot constitute a breach of fiduciary duty and it might be a breach of fiduciary duty *not* to seek a resolution of the dispute. We agree.

[¶ 19] The Legislature has imposed certain fiduciary duties on directors and officers of nonprofit corporations:

The directors and officers of the corporation shall exercise their powers and discharge their duties in good faith with a view to the interests of the corporation and with that degree of diligence, care and skill which ordinarily prudent men would exercise under similar circumstances in like positions. In discharging their duties, directors and officers may in all cases rely upon the books and records of account....

13–B M.R.S.A. § 716 (1981).

[¶ 20] The third-party complaint alleges that Percy et al. breached their fiduciary duties to the unit owners. It alleges that they acted ultra vires in commencing this lawsuit, that they acted with malice toward all defendants, and that the complaint lacks merit and the fees incurred were excessive. Nelson and Sawtelle contend that they have alleged bad faith, thereby sufficiently alleging breach of a fiduciary duty.[1]

[¶ 21] Bad faith "imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Research–Plan-*

---

1. Nelson and Sawtelle cite *Rosenthal v. Rosenthal*, 543 A.2d 348, 354 (Me.1988), in which the Court carved out an exception to the business judgment rule. The Court held that the business judgment rule, which ex-

empts the directors' business management decisions from judicial review, does not insulate directors from liability for breach of their fiduciary duties if they "acted primarily through bad faith or fraud...." *Id.*

*ning. Inc. v. Bank of Utah,* 690 P.2d 1130, 1132 (Utah 1984). Bad faith means "[d]is-honesty of belief or purpose...." BLACK'S LAW DICTIONARY 134 (7th ed.1999).

[¶ 22] The institution of a successful law-suit cannot constitute a breach of a fiducia-ry duty. Because the court rendered sum-mary judgments prior to its dismissal of the third-party complaint declaring that the Association validly elected new officers in 1998, the court correctly concluded that the allegations of malice were inadequate to state a claim for a breach of a fiduciary duty based on the institution of this law-suit. We therefore affirm the dismissal of the third-party complaint.

**D. Denial of Attorney Fees and Costs Sought Pursuant to the Declaration and the By-laws**

 [¶ 23] Martel and Nelson contend that they were entitled to recover attorney fees and costs pursuant to the indemnifica-tion provisions of article XVI, sections 16.1, 16.1.2, and 16.2 of the declaration and article V, section 16 of the by-laws. Ac-cording to Martel and Nelson, they are entitled to indemnification unless their ex-penses resulted from willful misconduct or bad faith, neither of which Percy et al. established. Percy et al. contend, *inter alia,* that Martel and Nelson are not enti-tled to attorney fees and costs because they improperly raised the claim for attor-ney fees as part of the relief sought in connection with the third-party complaint against four individuals, rather than through an action against the Association for indemnification pursuant to the decla-ration or by-laws.

[¶ 24] The defendants sought attorney fees by motion and in their answer to Seacoast's complaint. Parties may seek attorney fees by motion pursuant to M.R.Civ.P. 7(b)(1). *See, e.g., Thurber v. Bill Martin Chevrolet, Inc.,* 487 A.2d 631, 634–35 (Me.1985).

 [¶ 25] Attorney fees "may be awarded only when provided for by statute or agreement by the parties." *Elliott v. Maine Unemployment Ins. Comm'n,* 486 A.2d 106, 111 (Me.1984). When the decla-ration and by-laws use mandatory lan-guage, we review the decision to deny the motion for attorney fees as a question of law. *See Thurber,* 487 A.2d at 635 ("where a mandatory reading would result in no ... internal inconsistency, and where the attorney's fees are clearly and unambigu-ously provided for ... 'shall' *requires* that the court award them") (emphasis in origi-nal). We review the court's interpretation of the corporate by-laws de novo. *See United States v. Wheeler,* 1999 ME 54, ¶ 9, 726 A.2d 1264, 1266 ("interpretation of an unambiguous contract is a question of law" reviewed de novo); *VonFeldt v. Stifel Fi-nancial Corp.,* 714 A.2d 79, 83 n. 14 (Del. 1998) (interpretation of corporate by-laws is also a question of law subject to de novo review).

[¶ 26] The parties agreed to abide by the declaration and the by-laws. The declara-tion provides, in pertinent part:

16.1. *Limited Liability of the Execu-tive Board.* The Executive Board, and its members in their capacity as mem-bers, officers and employees:

. . . .

16.1.2. Shall not be liable to the Unit Owners as a result of the performance of the Executive Board members' duties for any mistake of judgment, negligence or otherwise, except for the Executive Board members' own willful misconduct or gross negligence....

. . . .

16.2 *Indemnification.* Each member of the Executive Board, in his capacity as an Executive Board member, officer or both, shall be indemnified by the Association against all expenses and lia-bilities, including attorney's fees, reason-

ably incurred by or imposed upon him in connection with any proceeding in which he may become involved by reason of his being or having been a member and/or officer of the Executive Board, or any settlement of any such proceeding, whether or not he is an Executive Board member, officer or both at the time such expenses are incurred, except in such cases wherein such Executive Board member and/or officer is adjudged guilty of willful misconduct or gross negligence in the performance of his duties....

The by-laws also limit the liability of the directors in article V: "Section 16. *Liability of the Board of Directors.* The members of the Board of Directors shall not be liable to the Unit Owners for any mistake of judgment, negligence, or otherwise except for their own individual willful misconduct or bad faith...."

[¶ 27] The declaration allows the directors to recover attorney fees for litigation in which they were joined because of their roles as directors, unless they were adjudged guilty of bad faith, willful misconduct, or gross negligence. The court made no factual finding of such misconduct or ill motive on the part of Martel or Nelson. It is immaterial whether the Association prevailed in the suit below; the declaration and the by-laws do not restrict the recovery of attorney fees to the successful parties. *Cf. Bates Fabrics, Inc. v. LeVeen,* 590 A.2d 528, 531 (Me.1991) (stating director of corporation met standard for attachment because the director had an indemnification agreement that did not prohibit his recovery of attorney fees when sued by the corporation, unless there was a showing of bad faith).

[¶ 28] The court erred in determining, without conducting an evidentiary hearing to resolve the factual issues in dispute, that the defendants were not entitled to attorney fees and expenses. We remand for such a hearing.

**E. Grant of Costs**

[¶ 29] Martel et al. contend that the court should not have allowed the Association's bill of costs because the Association was not the "prevailing party," and because the court denied Martel et al. an opportunity to be heard. The Association contends that because the court found the Association to be the prevailing party it is entitled to costs pursuant to 14 M.R.S.A. § 1501 (1980).

[¶ 30] The Legislature has provided for the prevailing party in a suit to recover costs.

> In all actions, the party prevailing recovers costs unless otherwise specially provided. If, after verdict, the party in whose favor the jury found carries the case into the law court and the decision there is against him, he recovers no costs after the verdict but the party prevailing in the law court recovers costs accruing after verdict.

*Id.* "The following costs shall be allowed to prevailing parties in civil actions unless the court otherwise specifically directs: ... Filing fees....; Fees for service of process....; and ... Such other costs as the Supreme Judicial Court may direct by rule." 14 M.R.S.A. § 1502–B (Supp.2000). "[T]he court may include as costs, in such amounts as it considers just and reasonable ... [c]osts of depositions." *Id.* § 1502–C. "Costs shall be allowed as of course to the prevailing party, as provided by statute and by [the Maine Rules of Civil Procedure], unless the court otherwise specifically directs." M.R.Civ.P. 54(d). We review the court's order granting the Association's bill of costs for an abuse of discretion. *See Nicholson v. Nicholson,* 2000 ME 12, ¶ 10, 747 A.2d 588, 591.

[¶ 31] "Who is the prevailing party is to be determined by a functional analysis, rather than a mechanical application of

... [the rule governing costs]." *Dodge v. United Servs. Auto. Ass'n,* 417 A.2d 969, 974–75 (Me.1980) (alterations in original). To perform a functional analysis, the court "must look at the lawsuit as a whole to determine which party was the 'winner' and which the 'loser.'" *Id.* at 975.

[¶ 32] Martel et al. lost on all issues that were decided by motion before the court, after which the court dismissed the remaining three counts by consent. It was not an abuse of discretion for the court to conclude that the Association prevailed. In addition, the court was not required to conduct an evidentiary hearing on a bill of costs; rather, "[a]n evidentiary hearing on the reasonableness of costs or interest will be held only when the judge determines that there exists a substantial need for the hearing and the amount of challenged costs or interest are substantial." 14 M.R.S.A. § 1502–D (Supp.2000). The court did not abuse its discretion in allowing the Association's bill of costs.

The entry is:

Remand for a hearing on defendants' entitlement to reimbursement for their expenses, including attorney fees; and in all other respects, judgment affirmed.