STATE OF MAINE
CUMBERLAND, ss.

Location: PORTLAND
Docket No: BCD-CIV-2021-00052

MARY F. WOLFSON, as Trustee )
of the HILLMAN MATHER )
ADAMS NORBERG TRUST, )
                                             )
         Plaintiff, )
                                               )

     v. )
                                               )

BLAIR HOUSE ASSOCIATES )
LIMITED PARTNERSHIP, )
GENERAL HOLDINGS, INC, )
ROSA SCARCELLI, and )
THOMAS RHOADS, )
                                               )
        Defendants. )

**ORDER ON DEFENDANTS'
MOTION TO DISMISS**

M.R. Civ. P. 12(b)(6)

## INTRODUCTION

Plaintiff Mary F. Wolfson ("Plaintiff"), acting as Trustee of the Hillman Mather Adams Norberg Trust, asserts five counts against Defendants Blair House Associates Limited Partnership ("Blair House"), General Holdings, Inc. ("GHI"), Rosa Scarcelli ("Scarcelli"), and Thomas Rhoads ("Rhoads"). Count I of Plaintiff's Second Amended Complaint seeks declaratory judgment as to termination of GHI's authority as general partner for Blair House. In the alternative, Counts II and III seek damages for GHI's breach of fiduciary duties, as aided and abetted by Scarcelli and Rhoads. Count IV seeks appointment of a receiver pursuant to 31 M.R.S. § 1393. Count V seeks declaratory judgment as to events triggering the partnership's dissolution.

On June 21, 2022, Defendants filed a Motion to Dismiss pursuant to M.R. Civ. P. 12(b)(6), seeking dismissal of all five counts of the Second Amended Complaint. Plaintiff opposed the

1

Motion on July 26, 2022, and Defendants submitted a reply memorandum on August 12, 2022. After that no action was taken on the Motion while the parties engaged in global settlement discussions. As of December 30, 2022, the parties agreed to resolve a related issue by arbitration, but decision on at least some aspects of this Motion is now necessary to move the litigation forward.

After careful review, the Court concludes that Counts I and V of the Complaint fail to state a claim upon which relief can be granted. Accordingly, the Court grants the Motion with respect to Counts I and V. The Court reserves on Counts II, III, and IV pending conclusion of the parties' private arbitration efforts.

## STANDARD OF REVIEW

Dismissal of a civil action is proper when the complaint fails to state a claim upon which relief can be granted. M.R. Civ. P. 12(b)(6). When deciding a Rule 12(b)(6) motion to dismiss, courts examine the complaint in the light most favorable to the plaintiff to determine whether they set forth elements of a cause of action or allege facts that would entitle the plaintiff to relief pursuant to some legal theory. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. Dismissal is proper only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim. *Id.* Importantly, while the complaint's factual allegations are considered as if they were admitted, *Saunders v. Tisher*, 2006 ME 94, ¶ 8, 902 A.2d 830, a court is not bound to accept the complaint's legal conclusions. *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166.

## BACKGROUND

The following facts are drawn from Plaintiff's Second Amended Complaint:

2

Blair House Associates Limited Partnership was founded in 1990 to administer a Section 515 Rural Housing project. The Hillman Mather Adams Norberg Trust, of which Plaintiff is the Trustee, became Blair House's sole limited partner in August 2013 and now owns 99% of the partnership interests. Prior to March 2014, Blair House's general partners consisted of GHI and Pamela Gleichman ("Gleichman"), who owned 100% of GHI's issued stock. However, in March 2014, Preservation Holdings, LLC acquired all of Gleichman's GHI stock via foreclosure sale.

Blair House's operations are governed by its Second Amended and Restated Limited Partnership Agreement (the "Partnership Agreement"). Article IX, Section 9.1(a) of the Partnership Agreement provides a comprehensive mechanism for the removal of a general partner. Under this mechanism, limited partners may call a meeting to vote on a general partner's removal based on certain grounds, including the "occurrence of an Event of Withdrawal" or misconduct. The meeting must be preceded by written notice which "shall set forth in reasonable detail the Event of Withdrawal or the allegedly improper conduct." Under some circumstances a general partner can object, and the removal process is subject to arbitration.

An "Event of Withdrawal" is a defined term. According to Article II, an Event of Withdrawal means, among other events such as death or incompetency, "[t]he sale, assignment, transfer or encumbrance of a 'controlling interest' (meaning the power to direct the management and policies of such Person, directly or indirectly whether through the ownership of voting securities, by contract or otherwise) in a corporate General Partner." The Second Amended Complaint makes no allegation that Section 9.1(a)'s removal process was implemented following the foreclosure sale; thus, for purposes of this Motion, the Court finds it was not.

The Partnership Agreement also contains Article IX, Section 9.6, which provides as follows:

3

9.6   Effect of Bankruptcy, Death, Withdrawal, Dissolution or Incompetency of a General Partner

(a) If an Event of Withdrawal occurs with respect to a General Partner, any remaining General Partner shall elect to continue the business of the Partnership with the Partnership property; provided, however, that if the General Partner as to which the Event of Withdrawal occurs is then the sole General Partner, the Partnership shall be dissolved or continued subject to the provisions of Section 9.7.

(b) Upon the occurrence of any such event, such General Partner shall immediately cease to be a General Partner and her or its interest as General Partner shall terminate; provided, however, that such termination shall not affect any rights, obligations or liabilities of the bankrupt, deceased, dissolved or incompetent General Partner then existing or the value, if any, of the interest of such General Partner in the Partnership; and, provided further, that General Partner shall retain her or its Partnership interest thereafter as a Special Limited Partner.

Following an Event of Withdrawal with respect to a sole general partner as specified in Section 9.6(a), Section 9.7 accordingly provides that the Partnership may continue, notwithstanding the Event of Withdrawal, if a valid election to do so is made and a successor general partner is concurrently selected. Otherwise, the partnership must terminate. On a related note, Section 11.1, which lists conditions under which the partnership must be dissolved, provides that the partnership "shall be dissolved upon the . . . [s]ale of the Project other than pursuant to a contract of sale over a period of more than one year." A "sale" is defined by Article II to include "casualty or other disposition of all or any portion of the Property which is not in the ordinary course of business."

In May 2020, the project suffered a massive fire which destroyed all habitable apartment units and resulted in the payment of more than $9.8 million in casualty insurance proceeds to Blair House. A year later, another fire further damaged the project. Rather than rebuilding the project using the insurance proceeds, Plaintiff desired to prepay the mortgage with the approval of the United States Department of Agriculture, Rural Development, liquidate the project, and distribute the partnership assets. GHI, however, sought to rebuild and continue the project.

DISCUSSION

4

### A. Count I

Plaintiff argues that the Partnership Agreement lays out two different means for dissociating a general partner. According to Plaintiff, Section 9.1(a) governs deliberate actions to remove a general partner. Plaintiff makes no claim that the due process required by Section 9.1(a) was followed in this case. Rather, Plaintiff maintains no such process was required because Section 9.6(b) provides for the immediate and automatic termination of general partner status—without process—upon the occurrence of an "Event of Withdrawal." Specifically, Plaintiff interprets Section 9.6(b)'s reference to "any such event" to refer to an Event of Withdrawal. (Compl. 5; Pl.'s Opp'n to Mot. Dismiss 2.) In short, Plaintiff's declaratory judgment claim rests on an interpretation of the Partnership Agreement that distinguishes between deliberate actions to remove a general partner, which are governed by Section 9.1(a), and termination of a general partner, which Plaintiff argues occurs automatically by operation of Section 9.6(b). (Pl.'s Opp'n to Mot. Dismiss 4-6.) Based on this interpretation, Plaintiff seeks declaratory judgment that GHI was automatically terminated as general partner of Blair House upon transfer of the controlling interest in GHI from Gleichman to Preservation Holdings.

For purposes of this Motion, the Court assumes without deciding that the foreclosure sale of Gleichman's stock in GHI constituted an Event of Withdrawal. However, the Court rejects Plaintiff's interpretation of the Partnership Agreement as to the applicability of Section 9.6(b).

Partnership agreements are construed in accordance with ordinary contract law principles. As such, they are to be read as a whole in order to "give each provision and term effect, so as not to render any part of the contract mere surplusage." *Cordjia v. Athenahealth, Inc.*, No. BCD-CV-11-30, 2011 Me. Bus. & Consumer LEXIS 41, *10 (Nov. 17, 2011). In the absence of ambiguity, an agreement is interpreted according to the plain meaning of its provisions and extrinsic evidence

is not considered. *Green v. Lawrence*, 2005 ME 90, ¶ 15, 818 A.2d 1039. Where ambiguity exists, an interpretation that would render any particular provision in the agreement meaningless should be avoided. *McCarthy v. U.S.I. Corp.*, 678 A.2d 48, 52 (Me. 1996).

In this case, the term "any such event" in Section 9.6(b) is clear and unambiguous. Based on a plain reading of Section 9.6 as a whole, the term does not refer to "Events of Withdrawal," but rather refers to events described in the immediately preceding Section 9.6(a), namely, dissolution or continuation of the partnership subject to the provisions of Section 9.7. This is particularly clear not only when reading Section 9.6(b) in relation to Section 9.6(a), but also in light of the contrast between the uncapitalized phrase "any such event" and the specifically-defined and capitalized phrase "Event of Withdrawal," which appears nowhere in Section 9.6(b). Moreover, if Section 9.6(b) permitted automatic termination of a general partner, it would conflict with the plain language of Section 9.1(a), which provides not only a comprehensive procedural framework, but also expressly contemplates "removal . . . based on the occurrence of an Event of Withdrawal." If Section 9.1(a) were inapplicable to situations arising out of an Event of Withdrawal by virtue of automatic termination under Section 9.6(b), then this language would be rendered meaningless.

In sum, the Court declines to find ambiguity where none exists, and it will not adopt an interpretation of the Partnership Agreement that would place Sections 9.1(a) and 9.6(b) in direct conflict. The Court concludes that upon the occurrence of an Event of Withdrawal, Section 9.1(a) provides the exclusive mechanism for removing a general partner. That mechanism imposes specific procedural requirements, and removal is not effective until those requirements are fulfilled. In this case, those requirements have not been fulfilled. Section 9.6(b), on the other hand, refers only to events specified in Section 9.6(a). Thus, because there is no interpretation of the

6

Partnership Agreement under which a general partner's authority may be terminated through means other than those specified in Section 9.1(a), the Court determines that Count I fails to state a claim upon which relief can be granted.

### B. Counts II, III, and IV

The Court reserves on Counts II, III, and IV pending conclusion of arbitration.

### C. Count V

Count V seeks declaratory judgment that the May 2020 fire and/or the May 2021 fire constituted a "sale" as defined by Article II, thereby requiring dissolution of the partnership under Section 11.1. As Plaintiff noted in the Second Amended Complaint, an order was previously entered in this case (*Murphy, J.*) concluding, based on Blair House's intention to rebuild the project and its inability to prematurely dissolve without the approval of Rural Development, that the May 2020 fire did not constitute a "sale" under the Partnership Agreement. (*See* Order on Cross Motions for Judgment on the Pleadings 2-3). While Plaintiff is entitled to preserve the issue for appeal, that conclusion is now law of the case and will not be disturbed for purposes of deciding the Motion to Dismiss. *See Blance v. Alley*, 404 A.2d 587, 589 (Me. 1979) ("[A] judge should not in the same case overrule or reconsider the decision of another judge of coordinate jurisdiction."). Accordingly, this Court concludes that neither fire constituted a "sale" under the Partnership Agreement and Count V fails to state a claim upon which relief can be granted.

CONCLUSION

Based on the above, Defendants' Motion to Dismiss is **GRANTED IN PART**. Counts I and V of Plaintiff's Second Amended Complaint are **DISMISSED WITH PREJUDICE**. The Court reserves on Counts II, III, and IV.

The Clerk is directed to incorporate this Order into the docket by reference pursuant to Rule 79(a) of the Maine Rules of Civil Procedure.

Dated: ___02/13/2023___

_____
Michael A. Duddy, Judge
Business and Consumer Court

Entered on the docket: 02/13/2023