STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-22-342

MARIA TROCONIS and CARLOS
BELLO,

      Plaintiffs,

      v.

GRAIVER HOMES, INC., f/k/a
GRAIVER HOMES, LLC,

      Defendant.

)
)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON MOTION TO
DISMISS**

Before the Court is Defendant Graiver Homes, Inc., f/k/a Graiver Homes, LLC's ("Graiver

Homes") Motion to Dismiss. For the reasons set forth herein, Defendant's Motion is GRANTED

IN PART and DENIED IN PART.

## FACTUAL BACKGROUND

The following facts are drawn from Plaintiffs' Complaint and are accepted as true for the

purpose of considering the Defendant's Motion to Dismiss.[1] On April 10, 2016, Plaintiffs Maria

Troconis and Carlos Bello entered into a contract with Graiver Homes (the "Contract") for the

construction and purchase of a residential home. (Compl. ¶ 3.) The closing took place on October

21, 2016, at which time Plaintiffs purchased the home and acquired the deed. (Compl. ¶ 8.)

Although Plaintiffs properly and reasonably maintained the home, they later discovered several

construction defects. (Compl. ¶¶ 9-22.) Those defects caused significant structural and water

damage to the home. (Compl. ¶¶ 10-22.) Plaintiffs filed their Complaint on October 21, 2022.

---

[1] The Court will also consider the parties' contract, which is referred to in the Complaint and is central to Plaintiffs'
claim. *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 11, 843 A.2d 43.

1

REC'D CUMB CLERKS OF
APR 28 '23 AM10:14

Count I alleges breach of contract. Count II alleges negligence. Defendant's Motion to Dismiss was docketed on February 7, 2023.

## STANDARD OF REVIEW

A motion to dismiss under M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the claims. *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166. When the court reviews a motion to dismiss, "the complaint is examined 'in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory.'" *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426 (quoting *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43). Allegations in the complaint are deemed true for the purposes of deciding a motion to dismiss. *Id.* "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244.

## DISCUSSION

Defendant argues that Plaintiffs' Complaint is improperly filed in the Superior Court because the Contract contains a mandatory arbitration clause. Defendant further argues that Plaintiffs' claims are barred by the applicable statute of limitations, the terms of the Contract, and the economic loss doctrine.

## I. Arbitration Clause

Defendant argues that all of Plaintiffs' claims are subject to mandatory arbitration. Maine's presumption in favor of substantive arbitrability is broad. *V.I.P., Inc. v. First Tree Dev.*, 2001 ME 73, ¶ 4, 770 A.2d 95. Generally, a dispute will be subject to arbitration if (1) the parties have agreed to arbitrate disputes, and (2) the arbitration agreement encompasses the claims at issue. *Roosa v.*

2

*Tillotson*, 1997 ME 121, ¶ 3, 695 A.2d 1196. However, Maine's Uniform Arbitration Act ("MUAA") provides that arbitration agreements may be nullified "upon such grounds as exist at law or in equity for the revocation of any contract." 14 M.R.S. § 5927 (2023). "One 'such ground[]' upon which a court may invalidate an arbitration provision is where the agreement contravenes public policy." *Snow v. Bernstein*, 2017 ME 239, ¶ 11, 176 A.3d 729. "A contract is against public policy if it clearly appears to be in violation of some well established rule of law, or that its tendency will be harmful to the interests of society." *Id.* (quoting *Allstate Ins. Co. v. Elwell*, 513 A.2d 269, 272 (Me. 1986).

Plaintiffs argue that the arbitration clause in the Contract contravenes Maine's public policy and positive legislation because it does not conform to the requirements of the Home Construction Contracts Act ("HCCA"). Under the HCCA, home construction contracts must provide "[a]t a minimum" the following information regarding dispute resolution:

> If a dispute arises concerning the provisions of this contract or the performance by the parties that may not be resolved through a small claims action, then the parties agree to settle this dispute by jointly paying for one of the following (check only one):
>
> (1) Binding arbitration under the Maine Uniform Arbitration Act, in which the parties agree to accept as final the arbitrator's decision ( );
>
> (2) Nonbinding arbitration, with the parties free to reject the arbitrator's decision and to seek a solution through other means, including a lawsuit ( ); or
>
> (3) Mediation, in which the parties negotiate through a neutral mediator in an effort to resolve their differences in advance of filing a lawsuit ( )[.]

10 M.R.S. § 1487(8) (2023). The arbitration clause in the Contract reads as follows:

> Should any CONSTRUCTION related dispute arise between buyer and builder as parties to this contract, such dispute shall be settled through arbitration by either the American Arbitration Association or National Academy of Conciliators. The decision of the Arbitrators shall be final and binding. Should either party hire a lawyer before exhausting the arbitration process, the party hiring the lawyer, agrees to be fully responsible for their own attorney costs.

3

It is clear that this provision fails to conform to the requirements of the HCCA. Still, "nullifying a private, written contract provision should not be undertaken lightly," and the court will "look carefully at the argument that a provision contravenes an important public policy." *Snow*, 2017 ME 239, ¶ 12, 176 A.3d 729.

The Maine Legislature enacted the HCCA in 1987, with the intention of alleviating the "increasingly common consumer problem" of "[f]aulty home construction." L.D. 1044, Statement of Fact (113th Legis. 1987). The HCCA provides standard language that must be included in all home construction contracts for more than $3,000. 10 M.R.S. § 1487 (2023). Parties to a home construction contract cannot exempt themselves from the HCCA's requirements unless the contractor first "specifically informs the homeowner" of their rights under the HCCA. *Id.* § 1489. Defendant does not claim to have obtained Plaintiffs' informed consent for an exemption, and Plaintiffs deny having given informed consent. Thus, the parties are not exempt.

The Contract in this case clearly violates well-established law. Although arbitration itself does not violate public policy, *Snow*, 2017 ME 239, ¶ 10, 176 A.3d 729, Defendant's failure to provide Plaintiffs with all of the dispute resolution options available to them as required by law does violate public policy. Accordingly, the Court will not enforce the arbitration provision.

## II. Statute of Limitations

The parties agree that the applicable statute of limitations for Plaintiffs' claims is Maine's general six-year statute of limitations for civil cases. 14 M.R.S. § 752 (2023). Defendant argues that the statute of limitations began to run after the certificate of occupancy was issued on October 11, 2016, and that Plaintiffs' claims are therefore time barred. Plaintiffs argue that their claims are timely, because the statute of limitations did not begin to run until after the house was conveyed to Plaintiffs at the closing on October 21, 2016.

4

Plaintiffs are correct. "[A] purchaser's suit against a builder to recover for latent defects in the purchaser's new house begins from the date when the house is conveyed." *Dunelawn Owners' Ass'n v. Gendreau*, 2000 ME 94, ¶ 12, 750 A.2d 591 (quoting *Andreoli v. John Henry Homes, Inc.*, 297 Ill. App. 3d 151, 696 N.E.2d 1193, 1996, 231 Ill. Dec. 622 (Ill. App. Ct. 1998)). *See also Moore v. Erickson & Ralph, Inc.*, No. CV-10-33, 2011 Me. Super. LEXIS 159, at *19 (May 3, 2011) (statute of limitations begins to run on closing date). Plaintiffs initiated this lawsuit exactly six years after Defendant conveyed the house to them. Their claims are timely.

## III.    Contract Terms

Defendant contends that the Contract only provides for a one-year limited warranty, referring to the following provision: "A one years (1) limited warranty is included in this contract for defects in the work furnished by builder." Defendant argues that because the defects alleged in the Complaint went unnoticed for more than one year, Plaintiffs' claims are not covered by any warranties, express or implied. The law implies into every construction contract a warranty that the work will be performed in a "reasonably skillful and workmanlike manner." *Gosselin v. Better Homes, Inc.*, 256 A.2d 629, 639 (Me. 1969). The Law Court has been clear that "[t]he warranty of workmanlike performance does not expire after an arbitrary time period," even if a certain time period is specified in the contract. *Parsons v. Beaulieu*, 429 A.2d 214, 218 (Me. 1981).

The HCCA also requires that all home construction contracts contain the following warranty statement: "In addition to any additional warranties agreed to by the parties, the contractor warrants that the work will be free from faulty materials; constructed according to the standards of the building code applicable for this location; constructed in a skillful manner and fit for habitation or appropriate use." 10 M.R.S. § 1487(7) (2023). As explained above, Defendant cannot exempt itself from the HCCA's requirements without the informed consent of the

5

homeowner, and Defendant does not allege to have obtained Plaintiffs' informed consent to exempt itself from the warranty requirement. The Contract is subject to the common law and HCCA warranties.

## IV.    Economic Loss

Finally, Defendant argues that Plaintiffs' negligence claim must be dismissed on the basis that it is barred by the economic loss doctrine. The economic loss doctrine precludes parties to a contract from pursuing tort recovery for purely economic losses related to the contract. *Schaefer v. IndyMac Mortg. Servs.*, 731 F.3d 98, 103 (1st Cir. 2013). Thus, while tort recovery is generally permitted for "personal injuries and physical damage to property other than the defective product," it is not permitted for economic losses arising from "a defective product's damage to itself." *Oceanside at Pine Point Condo. Owners Ass'n v. Peachtree Doors*, 659 A.2d 267, 270 (Me. 1995).

To determine whether a defective product has damaged other property, some courts follow the "integrated system rule,"[2] which provides that once a defective component has been integrated into a larger system, the entire system ceases to be other property for the purposes of the economic loss doctrine. *See Motorists Mut. Ins. Co. v. Ironics, Inc.*, 168 Ohio St. 3d 467, 2022-Ohio-841, 200 N.E.3d 149, at ¶ 29; *Wis. Pharmacal Co., LLC v. Neb. Cultures of Cal., Inc.*, 2016 WI 14, ¶ 10, 367 Wis. 2d 221, 876 N.W.2d 72; *Corvias Mil. Living, LLC v. Ventamatic, Ltd.*, 310 Kan. 824, 828, 450 P.3d 797 (2019). The Law Court adopted this approach in *Oceanside*, ultimately holding that the plaintiff condominium owners could not recover in tort for water damage allegedly caused by defective windows, because the windows were integrated into the condominiums. 659 A.2d at 271 (plaintiffs "purchased finished condominium units, not individual components of the units").

---

[2] This approach is also referred to as the "integrated product doctrine." *Dean v. Barrett Homes, Inc.*, 204 N.J. 286, 298, 8 A.3d 766 (2010).

6

Here, as in *Oceanside*, Plaintiffs purchased a finished home, not individual components of a home. Plaintiffs have not alleged personal injury or property damage to other property. The only damages alleged in the Complaint are damages to the home itself. Plaintiffs are therefore limited to contract damages. *See Wright v. Adept Bldg. Constr. LLC*, No. CV-18-436, 2019 Me. Super. LEXIS 29, at *4-5 (Jan. 29, 2019).

**Entry is:**

Defendant Graiver Homes' Motion to Dismiss is Granted in Part and Denied in Part. The Court GRANTS Defendant's request to dismiss Count II (negligence) but DENIES Defendant's request to dismiss Count I (breach of contract). The clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 4/28/23

John O'Neil Jr.
Justice, Maine Superior Court

Entered on the Docket: 05/01/2023

**Plaintiffs-Matthew Garascia, Esq.**
**Defendant-David Ginzer, Esq.**

7