1999 ME 67

## NEW ORLEANS TANKER CORPORATION

v.

## DEPARTMENT OF TRANSPORTATION

Supreme Judicial Court of Maine.

Argued Feb. 3, 1999.
Decided April 28, 1999.

John R. Bass, II, (orally), Thompson, Bull, Furey, Bass & MacColl, LLC, P.A., Portland, for plaintiff.

James E. Smith, (orally), Legal Division, Department of Transportation, Augusta, for defendant.

1. A bareboat charter is "a document under which one who charters or leases a boat becomes for the period of the charter the owner for all practical purposes." *Cacho v. Prince of Fundy*

Before WATHEN, C.J., and RUDMAN, DANA, ALEXANDER, and CALKINS, JJ.

CALKINS, J.

[¶ 1] New Orleans Tanker Corporation appeals from an order entered in the Superior Court (Cumberland County, *Cole, J.*) dismissing its complaint against the Department of Transportation (DOT) on the basis of sovereign immunity pursuant to the Maine Tort Claims Act (MTCA), 14 M.R.S.A. §§ 8101–8118 (1980 & Supp.1998). New Orleans contends that the court erred because its claim against the DOT for the negligent operation of the bridge leaf machinery on the Portland–South Portland Bridge (Million Dollar Bridge) falls within a statutory exception, 14 M.R.S.A. § 8104–A, to general governmental immunity provided by the MTCA. We disagree and affirm the judgment.

[¶ 2] In December 1997, New Orleans, the bareboat charterer [1] of the Overseas New Orleans, filed a complaint against the DOT for the negligent operation of the bridge leaf machinery on the Million Dollar Bridge. The complaint alleged that on December 23, 1995, the Overseas New Orleans was sailing westbound under the bridge when it came in contact with the bridge leaf on the Portland side of the bridge. The complaint charged the DOT with negligence in the ownership, maintenance, or use of the bridge machinery by either failing to open the bridge leaf completely or by dropping the bridge leaf on the vessel. New Orleans appeals the dismissal of the complaint pursuant to M.R. Civ. P. 12(b)(6).

[¶ 3] A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *See Dexter v. Town of Norway*, 1998 ME 195, ¶ 7, 715 A.2d 169, 171. We view the material allegation of the complaint as admitted and examine the complaint "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursu-

*Cruises, Ltd.*, 1998 ME 249, ¶ 2 n. 1, 722 A.2d 349, 351 n. 1 (quoting BLACK'S LAW DICTIONARY 149 (6th ed.1990)).

ant to some legal theory." *Id.* (quoting *McAfee v. Cole,* 637 A.2d 463, 465 (Me.1994)). "A dismissal is appropriate only when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Id.* The legal sufficiency of a complaint is a question of law. *See Sargent v. Buckley,* 1997 ME 159, ¶ 10, 697 A.2d 1272, 1275.

[¶ 4] The MTCA provides immunity to all governmental entities from suit on all tort claims seeking recovery for damages, "except as otherwise expressly provided by statute." *See* 14 M.R.S.A. §§ 8103–8104–A. Section 8104–A provides the exceptions to governmental immunity at issue in this case:

[A] governmental entity is liable for property damage, bodily injury or death in the following instances.

1. Ownership; maintenance or use of vehicles, machinery and equipment. A governmental entity is liable for its negligent acts or omissions in its ownership, maintenance or use of any:

    A.   Motor vehicle . . .;

    B.   Special mobile equipment . . .;

    C.   Trailers . . .;

    D.   Aircraft . . .;

    E.   Watercraft . . .;

    F.   Snowmobiles . . .;

    G.   Other machinery or equipment, whether mobile or stationary.

[¶ 5] In interpreting the statute to determine if the bridge leaf machinery is included within the meaning of "other machinery or equipment," we start from the premise that immunity is the rule and exceptions to immunity are to be strictly construed. In *Young v. Greater Portland Transit Dist.,* 535 A.2d 417, 419 (Me.1987), we stated that the MTCA "employed an 'exception-to-immunity' approach rather than an 'exception-to-liability' approach." We have consistently required the strict construction of the exceptions to immunity since the enactment of the MTCA. *See Dubail v. Department of Transp.,* 1998 ME 126, ¶ 7, 711 A.2d 1301, 1303; *Lynch v. Town of Kittery,* 677 A.2d 524, 525 (Me.1996); *Lovejoy v. State of Maine,* 544 A.2d 750, 751 (Me.1988); *Clock-*

*edile v. State Dept. of Transp.,* 437 A.2d 187, 189 (Me.1981).

[¶ 6] In strictly construing the section 8104–A(1) exceptions to liability, our decisions have given a narrow interpretation to the phrase "other machinery or equipment" in section 8104–A(1)(G). In order for there to be liability for the negligent use or operation of "other machinery or equipment," we require that the risk from the negligent use of the "other machinery or equipment" be comparable to the risk that results from the negligent use of the vehicles listed in section 8104–A(1)(A) through (F), that is, motor vehicles, special mobile equipment, trailers, aircraft, watercraft, and snowmobiles. *See J.R.M., Inc. v. City of Portland,* 669 A.2d 159, 161 (Me.1995).

[¶ 7] In *McNally v. Town of Freeport,* 414 A.2d 904, 906 (Me.1980) (citation omitted), we said:

Particularly since the legislative history of this statute is far from clear, we hesitate to announce an all-inclusive construction of one of its major provisions. It is sufficient to note that for a device to come within the meaning of § 8104(1)(G) it must, as a result of its negligent ownership, maintenance or use, create a risk of injury to person or property comparable to the risk created by the negligent ownership, maintenance or use of the specifically enumerated items of machinery and equipment.

Thus, without expressly stating so, we cautiously applied the interpretive principle of *ejusdem generis* in which the meaning of general words of a phrase is limited to things or items of the same general class as those expressly mentioned. *See Penobscot Nation v. Stilphen,* 461 A.2d 478, 489 (Me.1983). The principle of *ejusdem generis* has been succinctly described by a leading commentator: "Where general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words." 2A NORMAN J. SINGER, SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 47.17 (5th ed.1992).

[¶ 8] It is readily apparent that the listed items in section 8104–A(1)(A) through (F) are items capable of transportation. They are mobile and likely to come into contact with the general public. Most are fairly ordinary transportation devices with which people have a fair degree of familiarity. Accidents with these items are common, and insurance is readily available. They are not machines affixed to a permanent structure which operate a moving part of that structure.

[¶ 9] The complaint in this case alleges that the negligent use of the bridge leaf machinery caused the bridge leaf not to open fully or not to remain in the open position. This resulted in damage to the tanker when it came into contact with the leaf of the bridge. The risk from the negligent use of the bridge leaf machinery is not comparable to the risks from the items listed in section 8104–A(1)(A) through (F). The major risk from the negligent use of vehicles with the power to move is that they will be driven or transported in locations where the general public is exposed to the possibility of a collision and resulting harm. Unlike vehicles, the bridge leaf machinery is part of the bridge; it is affixed to or contained within the bridge. Although there may be some risk from the negligent operation or maintenance of the bridge leaf machinery, it is not comparable to the risks from the other items. The general public does not come into contact with the bridge leaf machinery in the same way that the public comes into contact with governmental vehicles of the type enumerated in the statute.

[¶ 10] The Legislature did not intend the general phrase "other machinery or equipment" in section 8104(1)(G) to include all other possible machinery and equipment that is negligently owned or operated by a governmental unit and could therefore cause some form of personal injury or property damage. If that were the case, there would be no need to list specific items, such as snowmobiles, and the general term would render the specific terms surplusage. It is a well-established principle of statutory construction that "nothing in a statute may be treated as surplusage if a reasonable construction ... is otherwise possible." *Struck*

*v. Hackett,* 668 A.2d 411, 417 (Me.1995) (citation omitted).

[¶ 11] It is true that "other machinery or equipment" contains the modifying phrase "whether mobile or stationary." 14 M.R.S.A. § 8104–A(1)(G). It can be argued that the use of this phrase means that "other machinery or equipment" cannot be restricted to items similar to those listed in section 8104(1)(A) through (F), that is, items capable of transporting people or things or other self-propelled vehicles, and that if we were to interpret "other machinery or equipment" in such a narrow fashion, we would be negating the phrase "mobile or stationary." The latter phrase, however, is as ambiguous as the first. It could refer to machinery or equipment capable of movement whether moving or stationary at the time of the negligence, or it could refer to machinery or equipment that has no capacity for movement and is always stationary. For the purposes of this case, it is not necessary to decide what "mobile or stationary" means; it is sufficient to state that the phrase "mobile or stationary" does not enlarge "other machinery or equipment" such that the phrase encompasses all the innumerable machines and equipment which governmental units could conceivably own or use. "Other machinery or equipment whether mobile or stationary" must be in the same general class as the listed items in section 8104–A(1)(A) through (F).

[¶ 12] Further support that the Legislature did not intend for a governmental unit to be liable for the negligent operation of bridge leaf machinery can be found in the legislative history to the MTCA. The original bill included a provision that liability could attach for "a dangerous, unsafe or defective condition ... created in the construction, operation or maintenance ... of any bridge." L.D. 87 (108th Legis.1977). This relevant language, however, was deleted before enactment. *See* L.D. 162 (108th Legis.1977). One of the senators explained that the provision was removed to avoid high insurance costs, *See* 1 Legis. Rec. 71 (1977).

[¶ 13] Finally, case law from Delaware, a jurisdiction that modeled its governmental immunity statute on the MTCA, also pro-

vides support for interpreting "other machinery or equipment" narrowly.[2] *See Triple C. Railcar Serv. Inc. v. City of Wilmington,* 630 A.2d 629, 631 (Del.1993). The Delaware statute provides:

> A governmental entity shall be exposed to liability for its negligent acts or omissions causing property damage, bodily injury or death in the following instances: (1) In its ownership, maintenance or use of any motor vehicle, special mobile equipment, trailer, aircraft or other machinery or equipment, whether mobile or stationary.

DEL. CODE ANN. tit. 10 § 4012(1) (Supp.1998). The *Triple C. Railcar* case involved a tidegate whose purpose was to keep high tides from the flood areas of the Delaware River. It was alleged that the City of Wilmington failed to properly maintain the tidegate, and, because of the negligent maintenance, flooding occurred and caused damage to the plaintiff's property. *See Triple C. Railcar,* 630 A.2d at 630. The Delaware Supreme Court noted that it had previously utilized the principle of *ejusdem generis* to interpret "other machinery or equipment," and concluded that the equipment exception to immunity could not be allowed to "swallow the rule" and was limited to machinery or equipment that posed risks to the public because of its high mobility or inherent dangerousness. *See id.* at 631–32. It held that the tidegate was not included within the term "other machinery or equipment." *Id.* at 632.

[¶ 14] Strictly construing the exceptions to immunity, we do not agree that the bridge leaf machinery is included within the phrase "other machinery or equipment," in 14 M.R.S.A. § 8104–A(1)(G). Therefore, the trial court did not err by dismissing the complaint.

The entry is

Judgment affirmed.

DANA, J., with whom ALEXANDER, J., joins, dissenting.

[¶ 15] I respectfully dissent.

[¶ 16] I disagree with the Court's conclusion that "other machinery or equipment, whether mobile or stationary" must be capable of transportation like those enumerated items in section 8104–A(1)(A) through (F). We have stated, with respect to section 8104–A(1)(G) that "[a]ll definitions are perilous. Particularly since the legislative history of this statute is far from clear, we hesitate to announce an all-inclusive construction of one of its major provisions." *McNally v. Town of Freeport,* 414 A.2d 904, 906 (Me.1980) (footnote omitted). The Court's decision does just that by limiting section 8104–A(1)(G) to items capable of transportation, excluding, among other items, machinery or equipment affixed to permanent structures. This ignores both the intent of the Legislature—for if it intended to limit section 8104–A(1)(G) to equipment capable of transportation, it could have said so—and this Court's traditionally cautious approach in defining the scope of section 8104–A(1)(G). On four different occasions we have interpreted whether stationary equipment qualified as "other machinery or equipment," and each time we declined to adopt the narrow interpretation endorsed by the Court today. *See J.R.M., Inc. v. City of Portland,* 669 A.2d 159, 161 (Me.1995) (building's fire protection system); *Harris v. City of Old Town,* 667 A.2d 611, 613 (Me.1995) (railroad tracks); *Petillo v. City of Portland,* 657 A.2d 325, 327 (Me.1995) (automatic watering system); *McNally,* 414 A.2d at 906 (hypodermic syringe).

[¶ 17] The Court limits the scope of items in section 8104–A(1)(G) to items capable of transportation, whether moving or stationary at the time of the negligence. The definition misconstrues the meaning of the phrase "whether mobile or stationary." If the State negligently parks a motor vehicle on a highway and causes an injury, section 8104–A(1)(A) applies even though the motor vehicle was not moving at the time of the accident. Likewise, if the State negligently operates "other machinery or equipment" by placing movable equipment on a highway and causing an accident, section 8104–A(1)(G) ap-

---

**2.** In *Fiat Motors of North America, Inc. v. Mayor of the City of Wilmington,* 498 A.2d 1062, 1067, n. 8 (Del.1985), the Delaware Supreme Court traced the history of the Delaware governmental immunity act and noted that it was closely modeled on the MTCA.

plies even though the machinery is not moving at the time of the accident. Therefore, if the phrase "whether mobile or stationary" means "moving or stationary at the time of the negligence," then it is redundant. Instead, I would interpret the phrase "whether mobile or stationary" to include machinery or equipment that is incapable of movement and always stationary.

[¶ 18] The Court limits equipment in section 8104–A(1)(G) to items capable of transportation and thereby renders our traditional test analyzing the risks resulting from negligent use superfluous. The traditional test for determining if an item falls under section 8104–A(1)(G) is as follows: is the risk posed by the negligent ownership, maintenance or use of the item at issue comparable to the risk that results from the negligent ownership, maintenance or use of a motor vehicle, special mobile equipment, trailer, aircraft, watercraft, or snowmobile. *See J.R.M., Inc.*, 669 A.2d at 161; *Harris*, 667 A.2d at 613; *Petillo*, 657 A.2d at 327; *McNally*, 414 A.2d at 906. Pursuant to this Court's analysis set forth today, however, if an item is incapable of transportation, then it does not fall within section 8104–A(1)(G) and our traditional "risk analysis" is unnecessary.

[¶ 19] I would not limit "other machinery or equipment, whether mobile or stationary" to items capable of transportation. Instead, I would adhere to our established method of analysis and conclude that the negligent operation of bridge leaf machinery poses risks comparable to the negligent use of the other machinery listed in section 8104–A(1)(A) through (F). *See J.R.M., Inc.*, 669 A.2d at 161; *Harris*, 667 A.2d at 613; *Petillo*, 657 A.2d at 327; *McNally*, 414 A.2d at 906. Like the risks posed by a negligently operated motor vehicle, mobile equipment, or watercraft, the negligent operation of the bridge leaf machinery presents the risk of collisions with persons and property engaged in transportation on public roads and waterways— the precise risk that was realized here. *See J.R.M., Inc.*, 669 A.2d at 161. Accordingly, I would find that bridge leaf machinery qualifies as "other machinery or equipment, whether mobile or stationary" for which the DOT can be held liable for its negligent operation. *See* 14 M.R.S.A. § 8104–A(1)(G).

[¶ 20] The Court cites statutory language that the Legislature ultimately omitted from the MTCA to argue that the Legislature did not intend to impose liability for the operation of bridges. The omitted language provided that liability could attach for a governmental agency's negligent act or omission:

Where a dangerous, unsafe or defective condition has been created in the construction, operation or maintenance of any public building, structure, dam, reservoir, street, alley, sidewalk, bridge, highway or other public improvement controlled by such governmental entity, provided, that immunity shall not be removed under this subsection for latent conditions or conditions resulting from deterioration through continued use or exposure to weather unless constructive and actual notice to the governmental entity of such conditions prior to the occurrence alleged and proved.

L.D. 87 (108th Legis.1977). Even if this provision were in effect, it would not apply to the bridge leaf machinery in this case. A "dangerous, unsafe or defective condition" refers to physical conditions in public areas— holes, ditches, loose gravel, unsafe terrain, and the like—created by the State during the course of construction, operation, or maintenance. This provision, therefore, would not include the State's operation of a bridge or bridge equipment, where the bridge equipment did not create a dangerous "condition" in a public area. Because this omitted provision would not have included the negligent acts at issue here, the Court's reliance on the Legislature's consideration of this omitted provision is misplaced.

[¶ 21] Delaware case law relied on by the Court actually contradicts the Court's conclusion that "other machinery or equipment" is limited to equipment capable of transportation. *See Sadler v. New Castle County*, 565 A.2d 917, 923 (Del.1989); *Porter v. Delmarva Power & Light Co.*, 488 A.2d 899, 905–06 (Del.Super.Ct.1984), *rev'd on other grounds*, 547 A.2d 124 (Del.1988). Under Delaware law, "other machinery or equipment, whether mobile or stationary" includes such *stationary* equipment as electric transmission lines.

*See Sadler,* 565 A.2d at 923; *Porter,* 488 A.2d at 905–06.

[¶ 22] Moreover, the Delaware Supreme Court's decision in *Triple C. Railcar Service, Inc. v. City of Wilmington,* 630 A.2d 629, 632 (Del.1993), is inapposite. There, the State's alleged negligent operation of floodgates caused flooding that resulted in property damage, and the court held that floodgates were not "other machinery or equipment." *Id.* The tidegates were located in an isolated area, "pose[d] little danger to the general public," and did not cause the property damage by direct contact. *Id.* Unlike the tidegates, the bridge leaf machinery at issue here is located in a busy commercial center, poses risks to the general public engaged in travel on the waterways, and direct contact— as realized here in the form of a collision— poses substantial harm to the public and property. Therefore, Delaware law, and *Triple C. Railcar* in particular, provides little support for the Court's interpretation of "other machinery or equipment."

[¶ 23] The Court's decision constitutes a departure from established precedent interpreting the phrase "other machinery or equipment." I would conclude that the DOT is not immune from suit for its negligent operation of bridge leaf machinery.

