STATE OF MAINE
KENNEBEC, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AP-19-50

KIMBERLY (HOULE)
LAMARRE and ANTHONY
LAMARRE,
     Plaintiffs

**DECISION AND ORDER**

v.

TOWN OF CHINA
     and
NICHOLAS NAMER and
MARIE BOURQUE-NAMER,
     Defendants

## INTRODUCTION

This matter is before the court on an appeal by Kimberly (Houle) and Anthony LaMarre from the decision of the Land Use Board of Appeals of the Town of China. The Board upheld the after-the-fact issuance of a permit by the Town's Code Enforcement Officer (CEO) to Nicholas Namer to place a "Park Model" trailer on his property, which abuts the LaMarres' property. The appeal has been brought in accordance with M.R.Civ.P. 80B.

## FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of this controversy do not appear to be in dispute.

The LaMarres have owned their property in China, Maine since 1969. They abut the property owned by Mr. Namer, who acquired his lot in 2018. The Namer property is a non-conforming lot and has 5 seasonal camps on it. The prior owner of the Namer lot occasionally located a "camper" in the south-easterly section of the

1

property. A photograph of that camper is part of the record on appeal. (Record, "R" at 192).

In July 2018, Mr. Namer placed a "Park Model" trailer on the south-westerly section of his property. The dimensions of this trailer are: 40' 9" in length (including a hitch); 12' (or 144 inches) in width, with a shipping weight of 20,016 pounds. It is equipped with 6 wheels. The trailer is of wood frame construction with a pitched roof. It has a bedroom, a bath, a kitchen and a living area, with a total area of 399 square feet. (R. at 183-185). To install the trailer, Mr. Namer removed trees and vegetation from the area. No permit was sought or obtained by Mr. Namer before the trailer was placed on the property. A photograph of the trailer has been made part of the record on appeal. (R. at 126).

After the trailer was placed on the Namer property, the LaMarres complained about it to the Town's CEO, Paul Mitnick. On July 21, 2018, the CEO issued a "Notice of Violation" (NOV) to the Namers for failing to obtain a permit. A copy of the NOV was not provided to the LaMarres, notwithstanding their request for information from the CEO. (R. at 128, 149). Ms. LaMarre contacted the CEO again on August 8, 2018 when the trailer had been not been moved by that time. She received no response. On August 15, 2018, Ms. Namer applied for a CEO permit to "relocate the campsite previously located on the east side of the property," using the same septic system. The stated purpose of the relocation was "property oversight." (R. at 129). The application stated that the "camper" was a "park model" and would be "occupied less than 120 days a year." *Id.*

The LaMarres were not informed of the Namer permit application. On August 20, 2018, Ms. LaMarre again contacted the Town about her complaint, but again received no response. On August 21, 2018, CEO Mitnick issued a permit to Mr. Namer "to locate a camper pursuant to the application." (R. at 151). His written decision in support of the issuance of the permit appears to be dated August 9, 2018.

2

(R. at 149-50). In that decision, the CEO rescinded the NOV previously issued to the Namers, after "more carefully investigating facts and Ordinance requirements." The CEO recognized that the Namer lot is non-conforming but grandfathered. He noted that the non-conformity could continue "as long as conditions do not become more non-conforming." He then concluded:

> Although the current structure moved unto [sic] the lot has the appearance of a mobile home, the state regulations would not consider this a manufactured home due to the fact that it was not constructed in compliance with HUD standards.

The CEO determined that "[t]he structure meets the definition of an RV included within Chapter 11 of the China Land Development Code since

- It can be towed by a motor vehicle (A one ton pickup is a motor vehicle)
- Is built on a single chassis
- Is less than 400sf (actual size is 399sf)
- Its wheels are placed on the ground
- It is registered with the State Dept of Motor Vehicles
- It will be used as temporary living quarters (No more than 120 days per year)"

The CEO also recognized that the China Land Use Code allowed one recreational vehicle "to be placed on a private campsite" for up to 120 days. He interpreted "placed . . . as meaning occupied since most RV are parked on a lot for more than 120 days when not being used." (R. at 150).

The LaMarres were unaware that the CEO had issued a permit to Mr. Namer, as they were not notified of Mr. Namer's application, the CEO's written decision or the permit itself. From the record evidence, it appears that the LaMarres assumed

3

that the Namers had placed the trailer without a permit and the Town was not doing anything about it.

The following July of 2019, Mr. LaMarre met with the Town Manager about the Town's failure to respond to their requests for information. The LaMarres later learned from the Town Manager and the new CEO (William Butler) that a permit had, in fact, been issued. On July 8, 2019, CEO Butler informed the LaMarres that he had visited the Namer property and agreed with the decision to issue a permit because the trailer qualified as a recreational vehicle. He also informed the LaMarres, however, that due to the failure to provide them with notice of the original decision to grant the permit, they could appeal to the Board of Appeals. CEO Butler did not issue a new written decision.

The LaMarres did file an administrative appeal on August 6, 2019. Although the Namers, through counsel, moved to dismiss the appeal as untimely, the Board held that the appeal was timely, but ultimately denied it on September 26, 2019. The Board, sitting in an appellate capacity only, found that the "Park Model" trailer placed on the Namer lot appeared to meet "the structural requirements for recreational vehicles." Moreover, the Board concluded that the Namers had "attempted to meet the requirements of the town and have had the use of the camper for over a year." (R. at 237). As a result, the Board upheld the validity of the permit.

This timely Rule 80B appeal followed. The matter has been fully briefed, which was completed on February 20, 2020. In accordance with the "Revised Emergency Order" issued by the Supreme Judicial Court on March 18, 2020 regarding court safety and the coronavirus, and pursuant to M.R.Civ.P. 80B(l) this matter will be decided on the briefs without oral argument.

## STANDARD OF REVIEW

In an appellate capacity, the Superior Court reviews a municipality's decision directly for errors of law, findings not supported by the evidence in the record, or an

4

abuse of discretion. *Tenants Harbor Gen. Store, LLC v. Dep't of Envtl. Prot.*, 2011 ME 6, ¶ 8, 10 A.3d 722. The party asserting an error in a Rule 80B appeal bears the burden of showing that error before the court. *Quiland, Inc. v. Wells Sanitary Dist.*, 2006 ME 113, ¶ 16, 905 A.2d 806. A decision is supported by substantial evidence "when a reasonable mind would rely on that evidence as sufficient support for a conclusion." *Phaiah v. Town of Fayette*, 2005 ME 20, ¶ 8, 866 A.2d 863 (quotations omitted) (citing *Forbes v. Town of Southwest Harbor*, 2001 ME 9, ¶ 6, 763 A.2d 1183). The court may not substitute its judgment for that of the municipal decision-maker on questions of fact, and may not determine that an agency's decision is wrong "because the record is inconsistent or a different conclusion could be drawn from it." *Phaiah*, 2005 ME 20, ¶ 8, 866 A.2d 863.

A municipal board's interpretation of an ordinance, however, is a question of law that the court reviews *de novo*. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024 (citing *Logan v. City of Biddeford*, 2006 ME 102, ¶ 8, 905 A.2d 293). The court must "examine the plain meaning of the language of the ordinance" and reasonably construe its terms "in light of the purposes and objectives of the ordinance and its general structure." *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27. The Law Court has recently reminded us that "[b]ecause zoning ordinances, like statutes, derogate from common law, they are 'strictly construed.'" *Grant v. Town of Belgrade*, 2019 ME 160, ¶ 14, ____ A.3d ____.

There appears to be no dispute between the parties that the operative decision for the court to review is the written decision by CEO Mitnick upon which the issuance of the permit was based.

# DID THE BOARD OF APPEALS HAVE JURISDICTION TO ENTERTAIN THE APPEAL?

In their brief to the court, the Namers appear to challenge the timeliness of the appeal filed by the LaMarres to the Board of Appeals and, accordingly, the jurisdiction of the Board to hear that appeal.

There can be no question that the LaMarres did not file an appeal within 30 days of the issuance of the permit to the Namers by CEO Mitnick in August 2018. On the other hand, their appeal was timely if viewed as being taken from the decision of CEO Butler that the permit was properly issued.

The Law Court has recognized that there may be unique circumstances where an untimely appeal should be allowed to proceed because there is good cause to do so to prevent a flagrant miscarriage of justice. *See Viles v. Town of Embden*, 2006 ME 107, 905 A.2d 298; *Brackett v. Town of Rangeley*, 2003 ME 109, 831 A.2d 422.

In this case, the court agrees that such good cause exists. The LaMarres made persistent efforts to obtain information from the Town about the status of the Namer trailer and what the Town's CEO was doing about it. On numerous occasions, they received no response at all from the Town. They received no notice that a permit had been issued to Mr. Namer, even though they were abutters to the Namer lot. They reasonably assumed that no permit had been issued, but that the Town was not going to do anything about it. It was not until a year later, when the trailer was still there, that the LaMarres finally learned from a new CEO that a permit had already been issued.

Considering all of the circumstances of this case and the equities of the situation, the court agrees that the Board of Appeals had jurisdiction to entertain the LaMarres' appeal.

## IS THE PARK MODEL TRAILER A RECREATIONAL VEHICLE AS DEFINED IN THE LAND USE ORDINANCE?

The central question in this dispute is whether Mr. Namer's Park Model trailer is a "recreational vehicle" within the meaning of the China Land Use Ordinance. The Ordinance allows for "individual private campsites," (R. at 39), which are defined as "[a]ny premises providing temporary accommodation in a recreational vehicle or tent and used exclusively by the owner of the property and his or her family and friends." (R. at 102). Prior to establishing such a campsite, "[a] permit is required from the CEO . . . ." (R. at 39).

The Ordinance defines "Recreational Vehicle" as:

> A vehicle or <u>an attachment to a vehicle designed to be towed,</u> and designed for temporary sleeping or living quarters for one or more persons, and <u>which may include a pick-up camper, travel trailer, tent trailer, camp trailer, and motor home.</u> In order to be considered as a vehicle and not as a structure, the unit must remain with its tires on the ground, and must be registered with the State Division of Motor Vehicles. (R. at 108) (emphasis supplied).

Invoking the maxim of statutory interpretation known as *ejusdem generis*, the LaMarres argue that to qualify as an RV under the Ordinance, it must be similar to the types of items specifically identified in the definition. They further argue that the Park Model trailer is totally unlike the examples in the definition, because it is not designed to be towed as an attachment like the examples are, but is prohibited (due to its width) from being towed on the public ways without a special permit. 29-A M.R.S. §2380 et seq.

The Town, on the other hand, asserts that *ejusdem generis* is inapplicable here because the definition of recreational vehicle in the Ordinance in clear and unambiguous. According to the Town, Mr. Namer's Park Model trailer meets every element of the definition of a recreational vehicle.

Before addressing the question of whether the Park Model trailer is an RV, as defined, the court would note that the parties have devoted considerable argument on the issue of whether the Park Model trailer is or is not a manufactured home, a modular home or a mobile home. The court's task here is only to determine whether the CEO committed legal error in concluding that the Namer Park Model trailer met the definition of an RV under the Town Ordinance. For purposes of this Rule 80B appeal, it is the Town's definition of an RV that controls.

In *Penobscot Nation v. Stilphen*, 461 A.2d 478, 489 (Me. 1983), the Law Court applied the rule of *ejusdem generis*, and described it in the following terms: "By the familiar *ejusdem generis* rule, a general term followed by a list of illustrations is ordinarily assumed to embrace only concepts similar to those illustrations." The description of this rule of construction has been cited with approval by several subsequent Law Court opinions. *See, e.g., New Orleans Tanker Corp.*, 1999 ME 67, ¶ 7, 728 A.2d 673; *Henry Banks v. Maine RSA#1*, 1998 ME 272, ¶ 7, 721 A.2d 655; *Clarke v. Olsten Certified Healthcare Corp.*, 1998 ME 180, ¶ 6, 714 A.2d 823; *Buker v. Town of Sweden*, 644 A.2d 1042, 1044 (Me. 1994).

There are also cases that state the rule of construction in the reverse order. For example, in *State v. Ferris*, 284 A.2d 288, 290 (Me. 1971), the Court described the rule as follows:

> When words of enumeration are immediately followed by words of general import the general words, when their use is unclear, should be governed by the specific.

*See also New Orleans Tanker, supra; Carey v. Commissioner of Corrections* 95 N.E.3d 220, 223, n. 6 (Mass. 2018) ("Ejusdem generis does not apply here because rather than beginning with specific terms, this list begins with a general term, . . . , then provides nonexclusive examples.").

It is also true, however, that the maxim of *ejusdem generis* has "no application to an unambiguous statute, and should not be used to defeat the clear expression of an intent to include." *Young v. Greater Portland Transit Dist.*, 535 A.2d 417, 418, n. 2 (Me. 1987) (citations omitted). This is consistent with the fundamental principle that "[i]f an ordinance is clear on its face we will look no further than its plain meaning." *Grant*, 2019 ME 160, ¶ 14.

The Town maintains that the Ordinance is clear and unambiguous as to the definition of a recreational vehicle, and the Park Model trailer easily fits within that definition. In particular, the Town and Mr. Namer contend that the Park trailer is: an attachment designed to be towed since it is equipped with a hitch and 6 wheels; is designed for temporary sleeping quarters; the illustrative examples are merely permissive; the trailer has its tires on the ground and is registered with the Division of Motor Vehicles.

The LaMarres, for their part, insist that the definition of recreational vehicle as contained in the Ordinance is reasonably susceptible to different interpretations and is, therefore, ambiguous. *Acadia Ins. Co. v. Buck Constr. Co.*, 2000 ME 154, ¶ 9, 756 A.2d 515. Specifically, they point to the fact that the Town recognizes that "RV" manufacturers are building products that more closely resemble manufactured homes, which was not the type of trailer intended to be treated as a recreational vehicle under the Land Use Ordinance. In addition, they emphasize that CEO Mitnick himself originally believed the Park Model trailer was a mobile home, before changing his opinion.

In the court's view, the critical issue is what is intended by the phrase: "an attachment to a vehicle designed to be towed." One way of looking at this phrase is that it includes any trailer built/constructed/designed so that it can be towed by a vehicle, regardless of its size or the ease of moving it. In other words, so long as it was "designed" so that it could be towed, it is a recreational vehicle under the

9

Ordinance. Another way of looking at that phrase , however, is that it was intended to describe those trailers/attachments to a vehicle designed for the very purpose of being towed from place to place with relative ease. The court concludes that the definition of "recreational vehicle" in the China Land Use Ordinance is reasonably susceptible to more than one interpretation and is, therefore, ambiguous. Accordingly, it is appropriate to at least consider the application of the *ejusdem generis* rule of construction.

From the court's perspective, the list of examples explicitly mentioned in the Ordinance provides helpful insight into what the enactors of the definition intended. Those illustrations are a pick-up camper, travel camper, tent trailer and camp trailer and motor home – all motor vehicles or attachments to a motor vehicle that by their very design are easily towed from location to location on the public ways. Utilizing the rule of *ejusdem generis* as a guide to interpreting the Ordinance, it is reasonable to conclude that the drafters and enactors of the definition of "recreational vehicle" intended to include only those attachments to a motor vehicle that are similar to the examples listed.

The Park Model trailer that was permitted by the CEO in this case, is not similar at all to the examples listed in the definition of "recreational vehicle." Although it has a hitch and 6 wheels and, therefore, can be attached to a motor vehicle and be towed, it is not "designed to be towed" in the same way as the pick-up camper, travel trailer, tent trailer or camp trailer are. Indeed, at 144 inches in width, it exceeds by 3.5 feet the maximum width allowed by 29-A M.R.S. §2380(3) to be "operated on a public way or bridge," and requires a special permit to do so. 29-A M.R.S. §§2381-2382. The examples of attachments identified in the definition of "recreational vehicle" are all of a type that may be characterized as campers, which are intended to be placed on a private campsite. The Park Model trailer bears little, if any, resemblance to those types of attachments. *Compare* R. at 126 with

10

192. Even its name – Park Model trailer – implies that it is intended to be placed in a trailer park, not a campsite.

The Town argues that the list of examples is merely permissive – "and which may include . . ." – and, therefore, only "optional or discretionary." *Town's Brief at 3-4 citing State v. Wilson*, 264 S.E.2d 414, 416 (S.C. 1980) and *Carey v. Commissioner of Corrections*, 95 N.E. 3d 220, 223-24 (Mass. 2018). But those cases are fundamentally different than this one. In *Wilson* the court rejected the argument that a list of probation conditions should be limited by application of the principle of *ejusdem generis,* where the statute authorized the imposition of probation conditions and "may include among them any of the following *or any other*. 264 S.E.2d at 414 (emphasis added). Similarly, in *Carey* the court held that a prison superintendent's authority to establish search procedures at the institution to prevent smuggling by visitors, did not preclude the use of canine sniffing searches, because the regulation specifically allowed other types of searches but did not mention dog searches. In both of these cases the authority granted was clear and broad. Therefore, there was no need to employ *ejusdem generis* as an interpretive aid.

In this case, the definition of "recreational vehicle" in the Town of China's Land Use Ordinance is ambiguous, and application of *ejusdem generis* is both appropriate and helpful to the interpretation of its meaning and the types of "attachment[s] to a vehicle" there were intended to qualify as a "recreational vehicle."[1] Moreover, the phrase "which maty include" suggests that the examples that follow were intended to be the types of attachments allowed.

---

[1] In light of the court's ruling that the Park Model trailer does not qualify as a "recreational vehicle" under China's Land Use Code, it is not necessary for the court to address the other issues raised in this appeal, namely: (1) whether CEO Mitnick misinterpreted the Code by concluding that "placed on-site" means "occupied," (R. at 39 & 150), and; (2) whether, assuming the Park Model trailer is a "recreational vehicle under the Code, allowing it to be placed on the Namer lot resulted in that non-conforming lot to become more non-conforming in violation of the Code. With respect to the first issue, the Town appears to acknowledge that further findings

## CONCLUSION

The entry is:

The Plaintiffs' Rule 80B appeal is GRANTED. The Decision of the China Land Use Board of Appeals is REVERSED and the CEO permit # 2018-21 is VACATED.

Dated: April 2, 2020

Entered on the docket 4/3/2020

William R. Stokes
Justice, Superior Court

---

by the Board of Appeals would need to be made. (Town's Brief at 2). Regarding the second issue, the Town did not address this in its brief. The court would note that CEO Mitnick recognized that Mr. Namer's non-conforming lot cannot be allowed to become more non-conforming, but he did not set forth any reasoning as to whether placement of the much larger Park Model trailer at a different location on the lot would result in more conformity, and if not, why not.