STATE OF MAINE                                  SUPERIOR COURT
CUMBERLAND, SS.                                 CIVIL ACTION
                                                Docket No. CV-2021-453

JEREMY K. MARSTON,              )
                               )
              Plaintiff,        )           ORDER ON
                               )            DEFENDANT'S/COUNTERCLAIM
v.                             )            PLAINTIFF'S JOINT MOTION FOR
                               )            SUMMARY JUDGMENT
JOSHUA A. NAPPI, et al.,        )
                               )
              Defendants,       )


Before the Court is Defendants/Counterclaim Plaintiffs, Joshua Nappi's (Nappi) and

Daniel Torrey's (Torrey), Joint Motion for Summary Judgment. In addition, Nappi, Torrey and

Imperial Plumbing and Heating, LLC ("Imperial") move for summary judgment on their

counterclaim. Because the Court finds there is a genuine issue of material fact, the motion is

DENIED.

## I.      Factual Background

Marston and Nappi formed Imperial as a heating and plumbing business in April 2011.

Marston and Nappi each owned fifty percent of the business. In January 2020, Torrey acquired a

ten percent interest in Imperial and Marston and Nappi's interest in Imperial was subsequently

reduced to forty five percent each. Up to and until March 2020, Marston generally performed 40-

45 hours of work per week for Imperial. From March 2020 to July 2020, Marston took a

COVID-19 related leave of absence from Imperial.

In November 2020, all three members of Imperial agreed to purchase a fifty percent

interest in an investment property in Westbrook with another company, Halcyon, holding the

other fifty percent interest in the property. Marston spent the majority of his time performing

REC'D CUMB CLERKS OFC
MAY 8 '23 PM12:03

updates to the investment property rather than generating revenue for Imperial through its core business of heating and plumbing services. Marston completed the renovations to the investment and the property was rented beginning June 1, 2021.

Sometime in mid-May 2021, Nappi approached Marston and informed him that that the relationship was not working out and expressed his belief that Marston leaving Imperial was in Imperial's best interest. Buy-out negotiations ensued between Nappi, Torrey and Marston that were ultimately unsuccessful.

In August 2021, Nappi and Torrey formed another heating and plumbing company, Super Good. Super Good used a similar business model, serviced the same customer base, and utilized the same supply houses as Imperial. During the same month, Marston froze Imperial's credit cards so that no additional purchases could made using the card. Imperial and Super Good operated simultaneously with Torrey and two former Imperial employees performing work for Super Good. Imperial stopped performing heating and plumbing work in December 2021. Between May 2021 and August 2022, Marston did not perform any heating and plumbing work for Imperial for which he was paid.

## II.    Discussion

Summary judgment is granted to a moving party where the "no genuine issue as to any material fact" and the moving party "is entitled to judgment as a matter of law." M.R. Civ. P. 56(c). "A material fact is one that can affect the outcome of the case." *Dyer v. Dep't of Transp.*, 2008 ME 106, ¶ 14, 951 A.2d 821. A genuine issue of such material fact arises when the factfinder would be required to "choose between competing versions of the truth." *MP Assocs. v. Liberty*, 2001 ME 22, ¶ 12, 771 A.2d 1040. When evaluating a motion for summary judgment, the court will consider "the evidence and reasonable inferences that may be drawn from the

evidence in the light most favorable" to the party opposing summary judgment. *Lever v. Acadia Hosp. Corp.*, 2004 ME 35, ¶ 2, 845 A.2d 1178.

## A. *Breach of fiduciary duty*

Under Maine common law, a breach of fiduciary duty claim elements are (1) the existence of a fiduciary relationship, (2) a breach of a fiduciary duty, (3) and damages caused by the breach. *Meridian Med. Sys., LLC v. Epix Therapeutics LLC*, 2021 ME 24, ¶ 12, 250 A.3d 122. The parties do not dispute the existence of a fiduciary relationship but instead focus their dispute on the last two elements. Whether a corporate officer breached their fiduciary duty is largely a question fact. *Atlantic Acoustical and Installation Co. v. Moreira*, 348 A.2d 263, 267 (Me 1975).

In their motion, Nappi and Torrey seek summary judgment on their affirmative claim asserting Marston breached his fiduciary duty to them, namely his duty to act in good faith. Nappi and Torrey assert Marston violated his duty to act in good faith when he "unilaterally decided to spend the majority of his time work[ing] on improving the Property up and until May 2021" in defiance of the agreement between the members. Def.'s Mot. Summ. J. 3. Additionally, Nappi and Torrey assert Marston failed to act in good faith after the May 2021 conversation when Nappi suggested Marston leave Imperial because Marston did not perform any heating or plumbing work for Imperial.

However, Marston has successfully raised an issue of material fact with respect to his involvement with the investment property. Marston denies the existence of an agreement between the members pertaining to how the improvements to the property were to be performed. Opp. S.M.F ¶ 40. Additionally, Marston asserts that the extensive amount of time he spent improving the property was in good faith because the state of the property warranted the repairs

in order to be profitable and that the other 50% owner of the property, Halcyon, was not willing to perform the improvements. Marston contends the failure of the property to be profitable would harm Imperial. Therefore, Marston claims he acted in good faith when he prioritized performing the improvements on the investment property.

Moreover, Marston raises an issue of material fact with respect to the conversation he had with Nappi in mid-May 2021. Marston asserts during the conversation, Nappi asked him to leave Imperial in exchange for a "buyout". Marston then left Imperial and entered "buyout" negotiations with Nappi and Torrey, in contrast to Nappi and Torrey's assertion that Marston withdrew from Imperial in violation of his good faith duty.

Because an issue of material fact exists with respect to Marston's involvement with the investment property and the nature of the mid-May 2021 conversation between Marston and Nappi, Nappi and Torrey are not entitled to summary judgment on their affirmative claim against Marston for breach of fiduciary duty.

### B. Marston's alleged withdrawal from Imperial

In their motion, Nappi and Torrey assert Marston violated the terms of Imperial's operating agreement and in doing so violated Maine law. According to Imperial's operating agreement, any withdrawal by a voluntary act constitutes a violation of the operating agreement. Similarly, Nappi and Torrey assert, under the operating agreement, Marston is required to hold his position as Chief Operating Officer and continue to manage Imperial until a successor was chosen. According to Nappi and Torrey, Marston's actions following the mid-May 2021 conversation between him and Nappi constituted a wrongful withdrawal and a failure to manage Imperial. Specifically, Nappi and Torrey point to Marston's failure to perform heating and plumbing work for Imperial following mid-May 2021.

As discussed above, Marston has raised an issue of martial fact with respect to the mid-May 2021 conversation between he and Nappi. Marston asserts he complied with Nappi's request for him to leave Imperial and entered "buyout" negations with Nappi and Torrey. Therefore, the facts, viewed in the light most favorable to Marston, do not support a grant of summary judgment to Nappi and Torrey on the claim that Marston violated Imperial's operating agreement.

### C. Judicial expulsion

A person may be expelled from a limited liability company on judicial order if that person has

> A. Has engaged, or is engaging, in wrongful conduct that has adversely and materially affected, or will adversely and materially affect, the limited liability company's activities;
>
> B. Has willfully and persistently committed, or is willfully and persistently committing, a material breach of the limited liability company agreement or the person's duty or obligation under this chapter or other applicable law; or
>
> C. Has engaged, or is engaging, in conduct relating to the limited liability company's activities that makes it not reasonably practicable to carry on the activities with the person as a member;

31 M.R.S. § 1582(5).

In their motion, Nappi and Torrey seek judicial expulsion of Marston on the ground that Marston's voluntary withdrawal from Imperial violates 31 M.R.S. § 1582(5). But again, an issue of material fact exists with respect to Marston's actions following the mid-May 2021 conversation between him and Nappi. Therefore, Nappi and Torrey are not entitled to summary judgment on their claim that Marston violated the operating agreement by withdrawing from Imperial. Because this Court has not found Marston's conduct after mid-May 2021 violated

Imperial's operating agreement, Nappi and Torrey's request that Marston be expelled from Imperial is denied.

### D. Marston's claim for breach of fiduciary duty

Finally, Nappi and Torrey are seeking summary judgment on Marston's claim that they violated their fiduciary duty owed to Marston. Marston asserts that Nappi and Torrey violated their fiduciary duty when they formed Super Good and operated Super Good in direct competition with Imperial. By doing so, Marston claims Nappi and Torrey transferred most, if not all, of Imperial's value as a company, of which Marston owned forty percent, to Super Good, in which Marston does not have any ownership.

### I. Standing

In their Motion, Nappi and Torrey characterize Marston's claim as a usurpation of corporate opportunity action even though Marston does not do so in his pleadings. Nappi and Torrey characterize Marston's claim as such by highlighting that a claim for usurpation of corporate opportunity finds in roots in breach of fiduciary duty.

The Supreme Judicial Court of Maine "has adopted the American Law Institute's (ALI) definition of taking a corporate opportunity" *Northeast Harbor Golf Club v. Harris*, 1999 ME 38, ¶ 9, 725 A.2d 1018. Under The Principles of Corporate Governance "[a] director or senior executive may not take advantage of a corporate opportunity." Principles of Corp. Governance § 5.05(a) (Am. L. Inst.). A corporate opportunity means "[a]ny opportunity to engage in a business activity of which a senior executive becomes aware and knows is closely related to a business in which the corporation is engaged or expects to engage." *Id.* § 5.05(2).

However, Marston does not claim Nappi and Torrey learned of a new corporate opportunity and took advantage of it through Super Good. Rather, Marston's claim is that Super

Good services the same customers that Imperial previously serviced and by doing so Nappi and Torrey transferred the value derived from the customer base from Imperial to Super Good. Marston's breach of fiduciary duty claim is not grounded in usurpation of corporate opportunity and Marston has standing to bring his claim.

## II. Marston's claim

Nappi and Torrey counter Marston's claim on the grounds they acted in the best interest of Imperial following Marston's involvement with the investment property owned by Imperial and Marston's actions after mid-May 2021. But as discussed above, an issue of material fact exists as to the agreement between Marston, Nappi, and Torrey regarding the investment property and the events following the conversation between Marston and Nappi in mid-May 2021. Because there is a genuine issue of material fact, Nappi and Torrey's motion for summary judgment on Marston's claim is denied.

For these reasons:

Summary Judgment for Defendants/Counterclaim Plaintiffs Joshua Nappi's and Daniel Torrey's Motion for Summary Judgment on Plaintiff's Complaint and their Counterclaims is DENIED.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: 5/8/23

Thomas McKeon
Justice, Superior Court

STATE OF MAINE                                   SUPERIOR COURT
CUMBERLAND, ss.                                  CIVIL ACTION
                                                 DOCKET NO. CV-21-0453

JEREMY MARSTON                    )
                                  )
        Plaintiff                 )
                                  )
                                  )
        v.                        )
                                  )               ORDER
                                  )
JOSHUA A. NAPPI and DANIEL E. TORREY )
                                  )
        Defendants                )
                                  )
                                  )

        Before the Court is Plaintiff Jeremy Marston's ("Marston") Motion to Dismiss Counts I

and IV of Defendants Joshua Nappi and Daniel Torrey (individually "Nappi" and "Torrey",

collectively "Defendants") counterclaims. For the reasons set forth herein, the Motion is

DENIED.

## FACTUAL BACKGROUND

        The following factual background is derived from the allegations contained in Marston

and Nappi's counterclaims, which are the only facts considered by the court when deciding a

Motion to Dismiss. *See Bussell v. City of Portland*, 1999 ME 103, ¶ 1, 731 A.2d 862.

        In April of 2011, Marston and Nappi founded a Cape Elizabeth based plumbing and

heating company named Imperial to provide plumbing and heating services throughout southern

Maine. Marston and Nappi operated Imperial as joint owners from 2011 until 2020 when they

welcomed Torrey as a third owner. Torrey made a $5,000 capital contribution in exchange for a

10% ownership interest in the enterprise. Torrey and Nappi each retained a 45% interest. Torrey officially began working for Imperial on March 16th, 2020.

Twelve or so days prior, on or about March 4th, 2020, Marston purchased a new truck utilizing $8,000 of Imperial's liquid assets to do so. Marston then executed a leaseback agreement between himself and Imperial which required Imperial to cover his monthly truck payment at a rate of $693.05 a month.

On the day that Torrey started at Imperial — without any explanation — Marston stopped working and performing services for the company on a regular basis. Between March 16th, 2020, and August of 2020, Marston had little communication with Torrey and Nappi about the business and failed to generate any meaningful revenue.

In November of 2020, Imperial, along with another Maine based company Halcyon Built ("Halcyon"), purchased an investment property located in Westbrook. Each company owned 50% of the property with Imperial's share being split three ways among its members. Soon after the purchase, Marston decided, unilaterally, that he would spend a majority of his work hours at the Westbrook property.

In March of 2021, Imperial and Halcyon decided they would purchase a trailer to help with renovations to their jointly owned property. Marston spearheaded the idea and was tasked with handling the purchase, as well as seeking 50% reimbursement from Halcyon. Since the purchase, Marston has retained exclusive possession of the trailer and has not sought reimbursement.

In May of 2021, frustrated by Marston's lack of revenue generation, Nappi asked Marston to separate from Imperial. At the time, Marston admitted he had no intention of resuming full time employment with Imperial and that he was unable to work. Over the next

2

several months, Nappi and Torrey attempted to negotiate an amicable separation for Marston but were unable to do so. The last direct communication the parties had was via text message in May of 2021.

After the parties stopped communicating, Nappi and Torrey allege that Marston engaged in behavior detrimental to the company. On or about August 19th, 2021, they say Marston made an unauthorized $500 payment with an Imperial credit card. On or about August 27th, 2021, they claim that Marston shut down their use of the Imperial's credit card and prohibited them from accessing the company's online account or monthly statements.

On or about October 15th, 2021, Nappi and Torrey assert that Marston made an unauthorized $8,000 payment towards Imperial's credit card debt without regard to upcoming payroll processing. This payment threatened Imperial's ability to make payroll that week and resulted in a substantial overdraft of Imperial's accounts.

On or about November 30th, 2021, Marston attempted to use a company card to purchase gas in Vermont and on December 2nd, 2021, Marston sent $100,000 worth of invoices to customers for work which he had no involvement in. The invoices had already been paid and thus affected Torrey and Nappi's relationship with those customers. On or about December 6th, 2021, Marston made an unauthorized truck payment out of the imperial bank account. This forced Nappi to cancel all checks to avoid any further unauthorized payments by Marston.

After being effectively shut out of the business, Marston brought a one count complaint in the Cumberland County Superior Court on December 14th, 2021. On March 14th, 2022, both Nappi and Torrey independently filed an answer and identical four count counterclaims against Marston. On March 31st, 2022, Marston filed a motion to dismiss counts I and IV of Nappi and

3

Torrey's respective counterclaims. Nappi and Torrey filed a joint objection to dismissal on May 5th, 2022, and Marston filed his reply on May 18th.

## LEGAL STANDARD

"A motion to dismiss pursuant to M.R. Civ. P. 12(b)(6) tests the legal sufficiency of [a counterclaim]." *Seacoast Hangar Condo. II Ass'n v. Martel*, 2001 ME 112, ¶ 16, 775 A.2d 1166 (quoting *New Orleans Tanker Corp, v. Dep't of Transp.*, 1999 ME 67, ¶ 3, 728 A.2d 673). When the court reviews a motion to dismiss, "the [counterclaim] is examined 'in the light most favorable to the [counterclaim] plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the [counterclaim] plaintiff to relief pursuant to some legal theory.'" *Lalonde v. Cent. Me. Med. Ctr.*, 2017 ME 22, ¶ 11, 155 A.3d 426. Allegations in the counterclaim are deemed true for the purposes of deciding a motion to dismiss. *Id.* "A dismissal should only occur when it appears beyond doubt that a [counterclaim] plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 7, 843 A.2d 43 (quoting *McAfee v. Cole*, 637 A.2d 463, 465 (Me. 1994)) (internal quotations omitted).

## DISCUSSION

Nappi and Torrey's counterclaims each raise the same four counts. Count I alleges a breach of fiduciary duty, Count II alleges a breach of contract, Count III alleges a breach of the implied covenant of good faith and fair dealing, and Count IV seeks an order of judicial separation.

Marston hopes to dismiss Counts I and IV on 12(b)(6) grounds for failure to state a claim. The legal sufficiency of each Count is addressed in turn.

### I. Breach of Fiduciary Duty

4

Marston seeks to dismiss Nappi and Torrey's first Count on the grounds that any claim against Marston for damage to Imperial must be brought as a derivative action in accordance with 31 M.R.S. § 1632 (2022) and Maine Rule of Civil Procedure ("M.R. Civ. P.") 23B. Marston alleges that those authorities prevent Nappi and Torrey from maintaining an action for individualized harm when all the harm complained of in their respective counterclaims can be characterized as harm to Imperial's bottom line or its operations. Nappi and Torrey respond by saying that Section 1632 does not apply to Imperial, a closely held limited liability company ("LLC"), and maintain that 31 M.R.S. § 1631, and/or 31 M.R.S. § 1637(3) authorizes their claims for breach of fiduciary duty.

**A. Section 1632's Applicability**

Marston's Section 1632 based argument for dismissal is defeated by the text of 31 M.R.S. § 1637. That statute provides that, in the case of a "closely held limited liability company," which is one with "fewer than thirty five members," "sections 1632 through 1636 do not apply." 31 M.R.S. § 1637 (2022). Section 1632 authorizes derivative actions. Accordingly, a member of a closely held LLC cannot bring one.

In this case, Imperial is an LLC with three members — Marston, Nappi and Torrey. Thus, it is a closely held LLC to which Sections 31 M.R.S. §§ 1632-1636 do not apply. Accordingly, Marston's argument that Nappi and Torrey must bring their suit as a derivative action under Section 1632 fails. Nappi and Torrey's counterclaims are not dismissed on this basis.

**B. Section 1631**

5

Nappi and Torrey also claim that their direct action against Marston is permitted by 31 M.R.S. § 1631 which offers an alternative to derivative suits in the context of a closely held LLC:

**§1631. Direct action by member**

**1. Direct action against member.** Subject to subsection 2, a member may maintain a direct action against another member, a manager or the limited liability company to enforce the member's rights and otherwise protect the member's interests, including rights and interests under the limited liability company agreement or this chapter or arising independently of the membership relationship.

**2. Actual or threatened injury.** A member maintaining a direct action under this section must plead and prove an actual or threatened injury that is not solely the result of an injury suffered or threatened to be suffered by the limited liability company.

31 M.R.S. § 1631 (2022).

As Marston points out, for Nappi and Torrey's first Count to persist under Section 1631, they must "plead an actual or threatened injury that *is not solely the result of* an injury suffered or threatened to be suffered by the limited liability company." Thus, the court must review Nappi and Torrey's counterclaim to see if there are allegations which properly invoke Section 1631. Viewing both counterclaims in a light most favorable to them, there are.

Both Nappi and Torrey detail harm suffered by each of them as a result of Marston's actions. Their respective counterclaims allege, *inter alia*, that Marston's breaches caused harm to their professional reputations, caused overdraft penalties in their commercial accounts, and impacted their individual financial stability. (*See* Nappi Countercl. ¶¶ 31-32, 60, 71-76; Torrey Countercl. ¶¶ 44-46, 58, 66-67, 70, 81-82.) Viewing these allegations of harm in a favorable light to Nappi and Torrey, the court cannot say these alleged harms were *solely the result of* injury to Imperial. Accordingly, there exists a set of facts under which Nappi and Torrey may prove Section 1631 authorizes their claims.

6

## C. Section 1637

Notwithstanding Section 1637's excision of Section 1632's applicability to closely held

LLC's, Section 1637 offers an exception which allows a derivative action to be brought "if

justice requires."

> **3. Exception to limitation on derivative actions.** If justice requires:
>
>> **A.** A derivative action commenced by a member of a closely held limited liability company may be treated by a court as a direct action brought by the member for the member's own benefit; and
>>
>> **B.** Recovery in a direct or derivative action by a member of a closely held limited liability company may be paid directly to the plaintiff or to the closely held limited liability company if necessary to protect the interests of creditors and of other members.

31 M.R.S. § 1637(3) (2022).

The facts alleged by Nappi and Torrey in support of their breach of fiduciary duty claim,

seem to seek redress for actions which caused financial and reputational damage to Imperial.

Both counterclaims, therefore, allege facts which could constitute a derivative action brought by

Nappi and Torrey on Imperial's behalf. *See Ross v. Bernhard*, 396 U.S. 531, 538-39 (1970) ("In

a shareholder's derivative suit, the wrong complained of is to the corporation, and the

shareholder is merely a nominal plaintiff.") Thus, the heart of the argument under Section

1637(3) is whether, in this case, "justice requires" allowing a derivative claim to proceed on

behalf of Imperial. Marston argues it does not, while Nappi and Torrey argue it does.

With little case law concerning this statute, both parties direct the court to two cases, both

captioned *Cianchette v. Cianchette* for authority in interpreting the phrase "if justice requires."[1]

---

[1] In *Beaudry v. Harding*, 2014 ME 126 ¶ 5, 104 A.3d 134, the Law Court held that a member of an administratively dissolved LLC may not bring a direct action when the harm alleged was not personal to him. *Beaudry*, however, is distinguishable. That case did not involve any claim for breach of fiduciary duties by members. The plaintiff in *Beaudry* was instead attempting to sue a lawyer who had previously represented the LLC for professional negligence. 2014 ME 126 ¶ 3, 104 A.3d 134.

7

The first *Cianchette* case, *Cianchette I*, is cited by the Nappi and Torrey to support maintenance of their counterclaims under Section 1637(3). No. CV-16-249, 2018 Me. Super. LEXIS 13 at **33-39 (Jan. 17, 2018). The second, *Cianchette II*, is cited by the Defendant, in support of their request for dismissal. No. BCD-CV-19-42, 2019 Me. Bus. & Consumer LEXIS 46 **15-16 (Dec. 16, 2019). *Cianchette II* merely paraphrases the conclusions reached in *Cianchette I* that were relevant to the facts presented there. Accordingly, this court looks to *Cianchette I* for guidance in its analysis.

In *Cianchette I*, the court determined that justice did require permission of a derivative action as a direct action because the harm allegedly "involved oppressive action by majority shareholders against the interests of minority shareholders or alleged breaches of fiduciary duty owed to minority shareholders." No. CV-16-249, 2018 Me. Super. LEXIS 13 *34 (Jan. 17, 2018) (citing 2 O'Neal and Thompson's Close Corporations and LLCs § 9:26 (3d ed.) at n.35).

Here, Marston and Nappi each own a 45% share of Imperial, while Torrey owns 10%. Despite there being no individual majority shareholder, Nappi and Torrey's combined shares constitute a 55% majority stake. Thus, relying on *Cianchette's* interpretation of the phrase "justice requires" as constituting "oppressive action" taken by majority shareholders against minority shareholders, is inappropriate on these facts. Such a definition contemplates a direct suit by a minority stakeholder.

The *Cianchette I* court also stated:

> 31 M.R.S. § 1637(3) essentially tracks § 7.01(d) of the American Law Institute's 1994 Principles of Corporate Governance. ALI Comment (e) to § 7.01 suggests that direct actions by shareholders in closely held LLCs may be allowed if they will not (1) unfairly expose the corporation or the defendants to multiple actions, (2) prejudice the interests of creditors of the corporation, or (3) prejudice the rights of other shareholders.

*Id.* at * 38 (citing Principles of Corporate Governance, § 7.01(d), cmt. e, Am. L. Inst. (1994)).

8

In this case, the factual allegations within both Nappi and Torrey's counterclaim do not suggest that continued suit will unfairly expose Imperial or Marston to multiple actions, will prejudice the interests of any creditors of Imperial, or prejudice the rights of other shareholders.

Courts undertaking this inquiry have noted that deciding whether "justice requires" a derivative action to be treated as a direct action is highly discretionary. *See, e.g., Guajardo v. Hitt*, 562 S.W.3d 768, 780 (Tx. Ct. App. 2018) ("[C]ourts have recognized that the decision whether justice requires the shareholder to recover directly under this statute is a matter left to the trial court's discretion."); *Swank v. Cunningham*, 258 S.W. 3d 647, 666 (Tx. Ct. App. 2008) ("[T]he trial court has discretion to treat a derivative proceeding brought by a shareholder of a closely held corporation as a direct action brought by the shareholder for the shareholder's own benefit.")

At the 12(b)(6) stage, in consideration of the three factors laid out by the business court in *Cianchette I* and the highly discretionary nature of the Section 1637(3) analysis, the court concludes that — viewed in a light most favorable to Nappi and Torrey — each of their counterclaims allege set of facts which "may" require treating their otherwise derivative claims as direct actions. Accordingly, Nappi and Torrey's first count is procedurally proper.

## D. Merits of Breach of Fiduciary Duty Claim

Finally, the court must determine whether it states a prima facie substantive claim. Under Maine common law, the elements of a breach of fiduciary duty claim are (1) a fiduciary relationship between the plaintiff and another person, (2) a breach of the other person's fiduciary duty toward the plaintiff, and (3) damages incurred by the plaintiff proximately caused by the breach. See *Steeves v. Bernstein, Shur, Sawyer & Nelson, P.C.*, 1998 ME 210, ¶ 10 n.8, 718 A.2d 186.

9

Under Maine Law, a member of an LLC owes other members various fiduciary duties. *See* 31 M.R.S. § 1559 (2022). Those include duties of good faith, diligence, care and skill. 31 M.R.S. § 1559 (1) (2022). Here, as a 45% owner/member of Imperial, Marston owed a fiduciary duty to Nappi and Torrey. And, viewed in a light most favorable to Nappi and Torrey, each counterclaim does allege a breach, by Marston, of his statutorily required duties.

Accordingly, Count I of both Nappi and Torrey's respective counterclaims survives Marston's Motion.

## II. Judicial Separation

Marston next seeks dismissal of Nappi and Torrey's fourth count which seeks an order of judicial separation from this court pursuant to 21 M.R.S. § 1582(5) (2022). Marston argues for dismissal on the premise that Section 1582 requires any action seeking judicially ordered expulsion of a member to be brought by the limited liability entity itself. Nappi and Torrey counter that, because Imperial was properly joined as a party-in-interest in each counterclaim under M.R. Civ. P. 13(h), the action brought under Section 1582 is proper.

A person is dissociated as a member from a limited liability company when:

. . .

**5. Expulsion by Judicial Order.** *On application by the limited liability company*, the person is expelled as a member by judicial order because the person:

> A. Has engaged, or is engaging, in wrongful conduct that has adversely and materially affected, or will adversely and materially affect, the limited liability company's activities;
>
> B. Has willfully and persistently committed, or is willfully and persistently committing, a material breach of the limited liability company agreement or the person's duty or obligation under this chapter or other applicable law; or
>
> C. Has engaged, or is engaging, in conduct relating to the limited liability company's activities that makes it not reasonably practicable to carry on the activities with the person as a member.

31 M.R.S. § 1582(5) (2022) (emphasis added).

10

Here, the plain text of Section 1582(5) supports Marston's assertion that any application for court ordered expulsion must be made by Imperial. However, the court agrees with Nappi and Torrey that Rule 13(h) permits them to join Imperial in the counterclaim for the purpose of seeking a judicial expulsion order.

"Persons other than those made parties to the original action may be made parties to a counterclaim or cross-claim in accordance with the provisions of Rules 19 and 20." M.R. Civ. P. 13(h). "A person who is subject to service of process shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties . . ." M.R. Civ. P. 19(a)

M.R. Civ. P. 13(h), and M.R. Civ. P. 19(a) operate together to permit Imperial's inclusion as a Party-in-Interest in both Nappi and Torrey's counterclaims. Pursuant to Rule 19(a), Imperial, a registered LLC in Maine, is subject to service of process, and is a necessary party to the pending counterclaims. Thus, Nappi and Torrey have properly joined Imperial in their counterclaims pursuant to M.R. Civ. P. 13(h). Accordingly, Count IV may proceed.

**Entry is:**

Plaintiff's Motion to Dismiss Counts I and IV of the Plaintiffs' counterclaims is Denied.

The Clerk is directed to incorporate this order into the docket by reference pursuant to M.R. Civ. P. 79(a).

Dated: 6/24/22

Thomas R. McKeon
Justice, Maine Superior Court

Entered on the Docket: 6/28/22